**ALLSTATE INSURANCE COMPANY and Home Insurance Company, Plaintiffs,**

v.

**EAGLE–PICHER INDUSTRIES, INC., et al., MacArthur Corporation, Nicolet Industries, Inc., Defendants.**

No. C8–86–2124.

Supreme Court of Minnesota.

Aug. 14, 1987.

James T. Hynes, St. Paul, for plaintiffs.

John P. Borger, Kirk O. Kolbo, Minneapolis, for Eagle-Picher, et al.

Thomas D. Jensen, Minneapolis, for Nicolet Industries, Inc.

John H. Faricy, Jr., Minneapolis, for MacArthur Co.

COYNE, Justice.

In an indemnity action instituted in the United States District Court by two workers' compensation insurers against several asbestos manufacturers, Judge Donald D.

Alsop has certified to this court two questions regarding the scope and application of Minn.Stat. § 176.061, subd. 10 (1986):

1. Does Minn.Stat. § 176.061, subd. 10 (effective July 1, 1983) apply to a claim for indemnity against an alleged third-party tortfeasor, where the employee's injury occurred and the workers' compensation claim was filed prior to July 1, 1983, but no workers' compensation benefits were paid until after July 1, 1983?

2. Are an employer and its workers' compensation insurer entitled to indemnity pursuant to Minn.Stat. § 176.061, subd. 10, against alleged third-party tortfeasors where (a) the workers' compensation benefits were paid for injuries allegedly sustained as a result of the employee's exposure to asbestos and (b) where the alleged tortfeasors were previously adjudged less at fault than the employee for his alleged asbestos-related injuries in a suit commenced by the employee in which the employer, but not the alleged tortfeasors, were parties at the time of trial.

We answer both questions in the negative.

The underlying facts are stipulated. Oscar Parsons, who worked for 26 years as an insulator, contracted asbestosis and lung cancer. Parsons made a claim for workers' compensation against several of his former employers, including API, Inc., and the compensation judge found that Parsons had contracted an occupational disease on or about March 29, 1981. That decision was appealed to the Workers' Compensation Court of Appeals.

Parsons also brought an action in Hennepin County District Court against several manufacturers of asbestos products. One defendant, Johns-Manville Sales Corporation, instituted third-party proceedings against API, Inc. Prior to trial five defendant manufacturers entered into settlement agreements with Parsons[1] and were dismissed with prejudice from Parsons' state court action in accordance with *Frey v. Snelgrove,* 269 N.W.2d 918, 923 (Minn.

---

1. We understand that the settlements expressly provided that the parties were settling only the employee's claim and did not purport to settle any claim of the employer. *See Naig v. Bloomington Sanitation,* 258 N.W.2d 891 (Minn.1977).

1978). API had not asserted any claim against the settling defendants and made no objection to their dismissal from the lawsuit. Parsons' action was tried against Johns-Manville and against API as third-party defendant. The trial court directed a verdict in favor of API and by special verdict returned on June 18, 1982, the jury apportioned fault in this way:

| | | |
|---|---|---|
| (a) | Plaintiff Oscar Parsons | 15.00% |
| (b) | The five settling defendants | |
| | (1) Eagle-Picher Industries, Inc. | 8.50% |
| | (2) MacArthur Corporation | 8.50% |
| | (3) Nicolet Industries, Inc. | 2.25% |
| | (4) Owens-Corning Fiberglas | 8.50% |
| | (5) Southern Asbestos Company | 2.25% |
| (c) | Johns-Manville Sales Corporation | 55.00% |

Findings of Fact, Conclusions of Law and Order for Judgment in accordance with the special verdict were entered March 10, 1983.

Parsons died on March 28, 1983; he had not received any compensation benefits. Mrs. Parsons sought dependency benefits, and in June of 1984 API and its insurers, Allstate Insurance Company and Home Insurance Company, entered into a settlement agreement with Mrs. Parsons pursuant to which in July 1984 Allstate and Home paid Mrs. Parsons $160,000 in full settlement of all claims for workers' compensation benefits.

The insurers, Allstate and Home, then commenced an action in federal district court against the five settling manufacturers alleging a right of indemnity pursuant to Minn.Stat. § 176.061, subd. 10 (1986).

In an effort to stem the rising cost of workers' compensation and to improve the delivery of compensation and medical benefits to injured workers, in 1983 the legislature adopted what it termed a comprehensive reform of the Workers' Compensation Act. Included in that revision were amendments to Minn.Stat. § 176.061 (1986), the section of the Workers' Compensation Act which deals with third-party liability. Effective July 1, 1983, section 176.061, subd. 10, provides as follows:

**2.** Minn.Stat. § 176.061, subd. 5(b) (1986), provides as follows:

Notwithstanding the provisions of chapter 65B or any other law to the contrary, an employer has a right of indemnity for any compensation paid or payable pursuant to this chapter, including temporary total compensation, temporary partial compensation, permanent partial disability, economic recovery compensation, impairment compensation, medical compensation, rehabilitation, death, and permanent total compensation.

However, the right of indemnity provided by subdivision 10 does not stand alone. The 1983 enactment also amended subdivision 7 of section 176.061 to accord the employer a separate cause of action "for other compensation payable" in addition to the existing separate cause of action for medical expenses. Under subdivision 7 the employer's cause of action may be asserted either in a separate action brought by the employer or in the employee's action brought pursuant to section 176.061, subd. 5. Since the original enactment of the Workers' Compensation Act in 1913, subdivision 5 and its predecessors have accorded the employer a right of subrogation. Subdivision 5, as amended in 1983, provides in pertinent part as follows (changes or additions inserted by the amendment are underscored):

(a) * * * If the injured employee or *the employee's* dependents or any party on their behalf receives benefits from the employer, * * * or *institutes* proceedings to recover *benefits* or *accepts* from the employer * * * any payment on account of the benefits, the employer * * * is subrogated to the rights of the employee or *the employee's* dependents *or has a right of indemnity against a third party.* * * * The proceeds of *the* action or settlement *of the action* shall be paid in accordance with subdivision 6.

Subdivision 6 prescribes the division of the "proceeds of all actions for damages or of a settlement of an action under this section, except for damages received under subdivision 5, clause (b)." [2]

(b) If an employer, being then insured, sustains damages due to a change in workers' compensation insurance premiums, whether by a

Noting the effective date of Minn.Stat. § 176.061, subd. 10, July 1, 1983, the manufacturers contend that it is inapplicable with respect to a claim based on an occupational disease contracted in 1981. Although the insurers acknowledge the general rule that rights under the workers' compensation system are fixed at the time of injury, *e.g., Kahn v. State, University of Minnesota,* 327 N.W.2d 21 (Minn.1982); *Abram v. Art Goebel Ford,* 327 N.W.2d 88 (Minn.1982), they point out that they assert a separate right of the employer, a right not necessarily fixed by that date. *Jones v. Honeywell, Inc.,* 281 N.W.2d 696 (Minn. 1979). Relying on *Calder v. City of Crystal,* 318 N.W.2d 838 (Minn.1982), the insurers contend the right of indemnity provided by section 176.061, subd. 10, accrued when they paid Mrs. Parsons $160,000 sometime in July 1983.

It must be observed at the outset that the right of indemnity with which we are here concerned is not the equitable remedy of indemnity but is rather a statutory cause of action incorporated into the Workers' Compensation Act, a statutory system of compensation for workers disabled by reason of injury arising out of and in the course of employment. Accordingly, subdivision 10 cannot be considered as if it stood alone but must be placed in the context of the workers' compensation system as a whole and, with particularity, in the context of the third-party liability section of which it is a part.

■ That the cause of action created by subdivision 10 accrues prior to the payment of compensation is apparent from the language of subdivision 10 itself, for the right of indemnity there provided is for compensation payable in the future as well as for compensation already paid. Furthermore, it seems to us that section 176.061, taken as a whole, presents a comprehensive plan for asserting the claims of both employer and employee against third parties and for distributing any sums recovered. Subdivision 7, which accords the employer a separate cause of action, also extends that action to compensation not yet payable. It provides that the employer's cause of action may be asserted in the employee's action, that it is to be separately stated, and that the amount recovered for medical expenses or other compensation is for the employer's benefit to the extent that employer "has paid or will be required to pay compensation or pay for medical treatment." The right to assert the employer's right of indemnity in the employee's action or in a separate action in the employee's name is recognized in subdivision 5, which also subjects the proceeds of the action to the distribution provisions of subdivision 6, which clearly deals with compensation past and future. Finally, subdivision 8a subjects any judgment rendered in a subdivision 5 action to a lien in favor of the employer for the amount to which the employer is entitled to be subrogated or indemnified under subdivision 5.

■ We are of the opinion that the right of indemnity provided by subdivision 10 for any compensation paid or payable pursuant to the Workers' Compensation Act accrues contemporaneously with the accrual of the obligation to pay compensation—i.e., at the date of injury. Minn.Stat. § 176.021, subds. 1 and 3 (1986). *Brown v. City of Pipestone,* 186 Minn. 540, 245 N.W. 145 (1932).

■ We also hold that Minn.Stat. § 176.061, subd. 10 (1986), does not afford the employer a right of indemnity with respect to workers' compensation benefits paid on account of injury sustained as a result of exposure to asbestos. More than twenty years ago this court held that the traditional principles of indemnity were in-

---

failure to achieve a decrease or by a retroactive or prospective increase, as a result of the injury or death of an employee which was caused under circumstances which created a legal liability for damages on the part of a party other than the employer, the employer, notwithstanding other remedies provided, may maintain an action against the other party for recovery of the premiums. This cause of action may be brought either by joining in an action described in clause (a) or by a separate action. Damages recovered under this clause are for the benefit of the employer *and the provisions of subdivision 6 are not applicable to the damages.* (Emphasis supplied).

applicable in the workers' compensation setting. *American Mutual Liability Insurance Co. v. Reed Cleaners*, 265 Minn. 503, 122 N.W.2d 178 (1963). Indemnity is a right which inures to a person who has discharged a duty which is owed by him but which, as between himself and another, should have been discharged by the other. Restatement of Restitution § 76 (1936). The doctrine of indemnity applies, however, only where the identical duty owed by one is discharged by another. The limiting features of indemnity have been stated in this way:

> * * * [N]ot only must a benefit be conferred on defendant by a discharge of his duty or obligation, but the discharge must have occurred under circumstances in which plaintiff was, *at the same time, discharging a personal obligation coextensive with that of defendant.*

42 C.J.S., Indemnity, § 3, quoted with emphasis supplied in *American Mutual Liability Insurance Co. v. Reed Cleaners*, 265 Minn. at 509, 122 N.W.2d 178.

The rights afforded by the Workers' Compensation Act are incidents of the employment relationship and are contractual in nature. *Miller v. Norris Creameries*, 311 Minn. 343, 250 N.W.2d 161 (1976); *Hagberg v. Colonial & Pacific Frigidways, Inc.*, 279 Minn. 396, 157 N.W.2d 33 (1968). The liability of the employer to pay compensation benefits clearly does not depend on whether the employee does or does not have a cause of action against a third party. The employer's liability exists in any event where the injury, including occupational disease, arose out of and in the course of employment, regardless of anyone's negligence. Minn.Stat. § 176.021, subd. 1 (1986). Furthermore, the extent of the employer's obligation under the Workers' Compensation Act is not determined according to the common law measure of damages. *E.g.*, Minn.Stat. §§ 176.101, 176.102 (1986).

It seems to us most unlikely that the legislature intended to shift the employer's obligations under the employment contract to third parties who are strangers to that contract in complete disregard of the principles of respondeat superior, comparative negligence, and the common law measure determinative of the nature and extent of damages recoverable in actions sounding in tort. Furthermore, the purpose to be served by subdivision 10 becomes apparent when the background for its enactment is considered.

In 1981, in *Metropolitan Transit Corporation v. Bachman's*, 311 N.W.2d 852 (Minn.1981), this court held that an employer, who had paid nonmedical temporary total disability benefits to an employee injured in a motor vehicle accident with a third party, had no right of recovery from the third party. Under the Minnesota No-Fault Automobile Insurance Act, adopted in 1974, the workers' compensation system was designated as the primary source for the payment of basic economic loss benefits otherwise payable by an automobile reparation obligor. Minn.Stat. §§ 65B.61, 65B.54, subd. 3 (1986). The No-Fault Act also precluded the injured worker—and the worker's subrogated employer—from recovering the value of economic loss benefits in an action arising out of the negligent maintenance or use of an automobile. Minn.Stat. § 65B.51 (1986). The result, of course, was to thrust a portion of the cost of injuries resulting from automobile accidents onto the workers' compensation system, a result which had lost its appeal by 1983. The 1983 amendment of section 176.061 appears simply to have been a response to the invitation we extended in the *Bachman's* case to legislative consideration of the interaction between the workers' compensation system and the no-fault automobile insurance system. In *Bachman's* both the court and the parties recognized that the employer could pursue its separate cause of action for medical expenses incurred as a result of a collision of Bachman's van and an MTC bus; only the nonmedical compensation benefits recoverable under a right of subrogation alone were barred. Thus, the amendments to subdivisions 5 and 7, which extended the separate cause of action to nonmedical compensation filled the hole carved by the No-Fault Act in the employer's right of subrogation. While the addition of subdivi-

sion 10 may constitute a sort of belt and suspenders legislation, it does make clear the legislature's intent to restore the employer's right against a third party to the extent its right of subrogation has been diminished by other legislative action.

Inasmuch as we have determined that Minn.Stat. § 176.061, subd. 10 (1986), which became effective July 1, 1983, does not apply to a claim for indemnity arising out of a work-related injury for which claim was made prior to July 1, 1983, and does not apply to a claim arising out of work-related injuries alleged to have resulted from exposure to asbestos, we find it unnecessary to determine the extent to which the parties to the present action are bound by the prior adjudication in the action instituted by the employee.

Certified questions answered in the negative.