**M.W. ETTINGER TRANSFER & LEASING CO., et al.,**
**Respondents,**

v.

**SCHAPER MANUFACTURING, INC., Appellant.**

**No. C7–91–1609.**

Court of Appeals of Minnesota.

March 17, 1992.

Review Granted April 29, 1992.

Lance B. Nyberg, Baukol, Nyberg & Thompson, St. Louis Park, for respondents.

Barbara A. Burke, Michael D. Barrett, Cousineau, McGuire & Anderson, Chartered, Minneapolis, for appellant.

Considered and decided by PETERSON, P.J., and NORTON and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

Stanley Julson worked for respondent M.W. Ettinger Transfer and Leasing Company (Ettinger). He was injured while loading a trailer at appellant Schaper Manufacturing's (Schaper) warehouse. Julson received workers' compensation benefits, sued Schaper for negligence, and ultimately entered a *Naig* settlement with Schaper. Later Ettinger and its insurer, respondent Fireman's Fund Insurance Company, commenced this action against Schaper under Minn.Stat. § 176.061 (1988) to recover workers' compensation benefits paid to Julson. Following a jury trial, Schaper was found partially liable. Schaper appeals from the judgment and the denial of its new trial motion.

## FACTS

On October 29, 1983, Stanley Julson and LeRoy Yabbie were employees of Ettinger. The two were loading a trailer with toys at appellant Schaper's warehouse. Schaper's employee, Peter Sullivan, was using a forklift to bring the toys to the trailer. The toys were packed in "cubes," which were loaded on the trailer and then broken down by Julson and Yabbie to pack. Julson and Yabbie were encouraging Sullivan to go quicker because they had gotten a late start packing the trailer. Julson was injured when one of the cubes veered to one side, pinning him against the side of the truck.

Julson applied for and received $95,000 in workers' compensation benefits. He then sued Schaper in November 1988 alleging negligence; the claim was eventually settled on a *Naig* basis. *See Naig v. Bloomington Sanitation*, 258 N.W.2d 891 (Minn. 1977). In turn, respondents commenced this indemnity action under Minn.Stat. § 176.061 (1988) for the workers' compensation benefits paid to Julson.

Following cross-motions for summary judgment, the trial court granted respon-

dents summary judgment on the question of damages, concluding that as a matter of law the amount of workers' compensation benefits paid to Julson equalled the amount of damages. The trial court also refused to submit to the jury a special verdict question concerning the separate fault of Ettinger. Following the trial, the jury by special verdict found Julson 40% negligent and Schaper 60% negligent. Judgment was entered for Julson in the amount of $57,-776.14. Schaper challenges the judgment and denial of its new trial motion.

### ISSUES

1. Did the trial court err in not allowing the jury to determine the amount of damages?

2. Did the trial court err in not submitting to the jury a special verdict question concerning the separate fault of the employee and employer?

### ANALYSIS

#### I.

The trial court concluded the amount of workers' compensation benefits paid to Julson was tantamount to the amount of respondents' damages in their indemnity claim against Schaper. The standard of review to be applied by this court is whether the trial court erred in applying the law. *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs. Inc.*, 260 N.W.2d 579, 582 (Minn.1977). This issue is purely legal in nature and this court therefore need not give deference to the trial court's decision. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

Minnesota law permits the employer or insurer the right of subrogation or indemnity against a third-party tortfeasor for workers' compensation benefits paid to an injured employee:

If the employee * * * elect[s] to receive benefits from the employer, * * * the employer * * * has a right of indemnity or is subrogated to the right of the employee * * * to recover damages against the other party. The employer * * * may bring legal proceedings against the party and recover the aggregate amount of benefits payable to or on behalf of the employee or the employee's dependents, together with costs, disbursements, and reasonable attorney fees of the action. Minn.Stat. § 176.061, subd. 3 (1988). *See also* Minn.Stat. § 176.061, subd. 7 (1988) (employer has separate cause of action against a negligent third-party to recover "amounts paid for medical treatment or for other compensation," payable under the Workers' Compensation Act).

The critical issue in this case is what the measure of damages should be in an employer's action under section 176.061 against a third-party tortfeasor. The trial court concluded the measure of damages was the amount of workers' compensation benefits paid. The trial court reasoned:

The employer and insurer's * * * rights against an at-fault third-party tortfeasor are measured by the workers' compensation benefits paid or payable. There does not appear to be any justification or reasons for submitting the issue of damages to the finder of fact. The damages are simply the workers' compensation benefits paid or payable.

In contrast, Schaper argues respondents must prove the nature, extent and causation of the harm allegedly arising from Julson's injury. According to Schaper, the trial court improperly concluded the amount of workers' compensation paid to Julson necessarily equalled the measure of damages for the indemnity action. We agree with Schaper and reverse.

*Allstate Ins. Co. v. Eagle–Picher Indus., Inc.*, 410 N.W.2d 324 (Minn.1987) is persuasive on this issue. In *Eagle–Picher*, two workers' compensation providers sued several asbestos manufacturers for indemnity based on Minn.Stat. § 176.061, subd. 10 (1986) for workers' compensation paid to the deceased employee's wife. In discussing the indemnity claim, the supreme court stated the rights afforded by the Workers' Compensation Act are incidents of the employment relationship and are contractual in nature. *Id.* at 328. Further, the Court explained in dicta the restrictions on the employer's right to indemnity under the Workers' Compensation Act:

The liability of the employer to pay compensation benefits clearly does not depend on whether the employee does or does not have a cause of action against a third party. The employer's liability exists in any event where the injury, including occupational disease, arose out of and in the course of employment, regardless of anyone's negligence. Furthermore, the extent of the employer's obligation under the Workers' Compensation Act is not determined according to the common law measure of damages.

It seems to us most unlikely that the legislature intended to shift the employer's obligations under the employment contract to third parties who are strangers to that contract in complete disregard of the principles of respondeat superior, comparative negligence, and the common law measure determinative of the nature and extent of damages recoverable in actions sounding in tort.

*Id.* (citations omitted).

Therefore the amount of workers' compensation benefits paid to an injured employee does not necessarily equal the amount of damages that a third-party tortfeasor is liable for in an indemnity action. The two claims—Julson's claim for workers' compensation benefits and respondents' claim for indemnity under section 176.061—are controlled by different rules of law. The respondents' obligation under the Workers' Compensation Act turns on the Act's statutory scheme for determining damages. Respondents paid Julson's benefits based on this scheme. However, respondents' right to indemnity from a third party tortfeasor, namely Schaper, is controlled by traditional negligence principles. *Id.* Accordingly, the nature, extent, and causation of Julson's injuries must be determined by the fact finder independent of the workers' compensation scheme. Therefore, the trial court erred by relieving respondents of their burden of proof on the issue of damages.

Significantly, the facts in this case indicate the amount of benefits paid to Julson was never seriously challenged. First, the record indicates respondents never obtained an independent medical evaluation of Julson. Second, Schaper's expert, Dr. Joseph Tambornino, apparently examined Julson in 1985 and found no objective evidence of back problems. In contrast, Schaper now claims its expert, John Guthmann, would have testified respondents overpaid Julson by about $37,000 for temporary total, temporary partial, and permanent partial disability.[1] Under these circumstances, the trial court erred by not allowing the issue of damages to be litigated.

We do nonetheless recognize the significance of respondents' public policy argument and weigh it in our decision. It is clear the Workers' Compensation Act tries to balance the rights of the employee, the employer, and the third-party tortfeasor. *See General Casualty Cos. v. Consolidated Freightways Corp.*, 413 N.W.2d 157, 160 (Minn.App.1987). Respondents argue that allowing litigation of the damage issue in this case frustrates the Act's underlying purpose. Specifically, they contend employers and insurers would inordinately scrutinize benefits paid to injured employees under the Act, knowing that the tortfeasor could afterwards challenge the reasonableness of the benefits; this would in effect disrupt the workers' compensation scheme. Moreover, respondents contend the tortfeasor would be protected at the expense of the employer.

■ We conclude, however, a competing public policy argument is more persuasive. When an employer or its insured only minimally scrutinizes the workers' compensation benefits paid to the insured, as is alleged here, then no balance is struck among the employee, the employer, and the tortfeasor's rights. Instead, the tortfeasor's rights, at least as concerns the amount of damages, are unprotected and ignored. We echo the reasoning in *Eagle-*

---

1. In its offer of proof, Schaper only estimated the amount of overpayment on the permanency rating, that being, $11,000. In its brief Schaper claimed the overpayment of temporary total and temporary partial benefits equalled $26,000,

making a total overpayment of $37,000. We of course make no determination of the accuracy of this amount; we do nonetheless conclude Schaper's offer of proof raised factual questions that should be resolved by the fact finder.

*Picher* and do not believe the legislature intended such a result. We therefore conclude employers and insurers must prove the nature, extent and causation of an injured employee's damages. If the common law measure of damages differs from the payments made under the workers' compensation scheme, the employer or insured is responsible for excess workers' compensation payments made. This rule of law will encourage employers to make payments according to the Act's requirements and provide the tortfeasor with a forum to protect its interests. Accordingly, the trial court erred by not allowing Schaper to litigate the issue of damages.

## II.

■ Schaper contends the trial court erred by not submitting the issue of Ettinger's fault to the jury in the special verdict form. At the close of Schaper's case at trial, respondents moved for a directed verdict concerning Ettinger's independent liability, separate from any vicarious liability for its employees. In not instructing the jury on Ettinger's fault, the trial court implicitly granted respondents' motion for a directed verdict on the liability issue. *See* Minn.Stat. § 604.01, subd. 1 (1990) (upon a party's request the trial court shall direct the jury to find separate special verdicts determining the fault attributable to each party).

■ A directed verdict should only be granted in those unequivocal cases where in light of the evidence as a whole, it would be clearly the trial court's duty to set aside a contrary decision as (1) manifestly against the entire evidence, or (2) where it would be contrary to the applicable law. *Walton v. Jones*, 286 N.W.2d 710, 714 (Minn.1979). In reviewing a directed verdict, this court makes an independent determination of the sufficiency of the evidence to present a fact issue to the jury. *Nemanic v. Gopher Heating & Sheet Metal*, 337 N.W.2d 667, 669 (Minn.1983).

We conclude the trial court erred by directing the verdict in Ettinger's favor. Had the trial court instructed the jury on Ettinger's possible negligence the jury's allocation of fault may have been different. The evidence, for example, shows that Et-

tinger may have negligently trained or supervised Julson and Yabbie. Testimony at trial indicated that Julson and Yabbie had their backs to the cargo as Sullivan loaded it, that Julson and Yabbie were urging Sullivan to go faster, and that Julson and Yabbie failed to use hand signals to communicate with Sullivan. Additional testimony indicated lighting in the truck may have been inadequate, making Ettinger negligent. Under these circumstances, there appears to be evidence, which if resolved in Schaper's favor, would allocate a portion of fault to Ettinger independent of its vicarious liability for Julson's injuries. The jury therefore should have had the opportunity to consider the independent negligence of Ettinger in allocating fault to the parties.

### DECISION

The trial court erred by not allowing the jury to determine the amount of damages in an action for indemnity under Minn.Stat. § 176.061. In addition, the trial court erred by directing the verdict in Ettinger's favor. We therefore reverse the trial court and remand for a new trial on the issue of damages and Ettinger's independent liability separate from its vicarious liability.

Reversed and remanded.