**M.W. ETTINGER TRANSFER & LEASING COMPANY and Fireman's Fund Insurance Company, Petitioners, Appellants,**

v.

**SCHAPER MANUFACTURING, INC., Respondent.**

No. C7–91–1609.

Supreme Court of Minnesota.

Dec. 24, 1992.

Rehearing Denied March 4, 1993.

Lance B. Nyberg, Baukol, Nyberg & Thompson, St. Louis Park, for appellants.

Barbara A. Burke, Michael D. Barrett, Cousineau, McGuire & Anderson, Chartered, Minneapolis, for respondent.

YETKA, Justice.

This case arises on Ettinger's appeal of a decision of the court of appeals reversing the trial court holding that the amount Ettinger is to recover from Schaper in a subrogation action pursuant to Minnesota's workers' compensation third-party statute, Minn.Stat. § 176.061 (1990), was equivalent to the amount of compensation benefits Ettinger paid the employee and also reversing the trial court's refusal to submit the issue of Ettinger's comparative fault to the jury. We affirm, but remand for a new trial on damages.

Ettinger is in the business of transporting goods. On Saturday, October 29, 1983, two of its employees, Stanley Julson and Leroy Yobbie, were directed to take two semi-trailer trucks to Schaper, a manufacturer of games and toys, to pick up a shipment of toys. Julson was to arrive first, and he was supposed to have his trailer loaded by the time Yobbie arrived.

Julson arrived at 7:00 a.m., but he had not yet begun loading his truck when Yobbie arrived at 8:00 a.m. The two then began to load Julson's trailer, assisted by Peter Sullivan, an employee of Schaper, who used a "clamp truck" to push boxes of toys into the trailers.

Clamp trucks are similar to forklift trucks, the difference being that, because clamp trucks "clamp", lift and push the items to be moved, the use of pallets is unnecessary. Boxes moved by clamp truck are arranged in "cubes", which are approximately 6 or 7 feet high and either 4 feet by 4 feet or 6 by 6 on the sides. The driver sits directly behind the load, and because of the height of the goods, the driver cannot see over them and must look to either side to see. As the goods are being moved into the trailer, the trailer driver is to stack them in the truck. The engine of the clamp truck is quite loud so communication in the trailer is usually done by the use of hand signals. The hand signals allow the clamp truck driver to know where he or she is and whether to stop or keep pushing. Because of the need for hand signals and the height of the goods in the clamp truck, the trailer

driver is to stand to the side of the trailer to be seen by the clamp truck driver.

At the time of the injury which is the cause of this subrogation action, Julson was standing on the right side of the trailer and Yobbie was on the left. Ettinger and Schaper seem to agree that communications between the trailer drivers and Sullivan were oral and not by hand signal as there is no allegation that hand signals were being used. The factual content of the oral communication is in dispute. Sullivan alleges that Julson and Yobbie were chanting "Let's go. Let's go. Let's go." and told him that they didn't have all day. Julson and Yobbie, however, deny making such statements, alleging instead that Yobbie yelled "whoa" immediately before the incident which caused Julson's injury.

Julson's injury was caused during the course of Sullivan's pushing cubes into the trailer. It occurred after about 15 feet of the 45-foot trailer had been filled. Allegedly, because he had not been given the hand signal to stop, Sullivan kept pushing cubes into the trailer when suddenly the cube farthest inside the trailer veered to the right and pinned Julson against the side of the trailer, hitting him in the lower back and hip and allegedly injuring him. After a short rest following the accident, Julson rejoined Yobbie and Sullivan to finish loading the trailers.

Julson subsequently sought workers' compensation benefits from Ettinger for his injuries and settled his claim for non-workers' compensation recovery on a *Naig* basis with Schaper. Ettinger paid Julson $95,000 in workers' compensation benefits and became subrogated to his claim against Schaper. Minn.Stat. § 176.061. Ettinger, therefore, filed suit against Schaper. On November 16, 1990, the trial court granted Ettinger's motion for partial summary judgment on the issue of damages, ruling, as a matter of law, that the amount recoverable by Ettinger from Schaper is the amount of benefits paid by Ettinger to Julson—$95,000. As to Schaper's argu-

ment that it should be able to contest the necessity, reasonableness, and causal relationship of the payments to Julson's injury, the trial judge stated:

> The payments made to injured party Julson were made pursuant to the Workers' Compensation Act and therefore, there can be no dispute as to their reasonableness, necessity, or causal relationship to the incident of October, 1983.

The trial judge also denied Schaper's request that Ettinger's comparative negligence be submitted to the jury. Minn.Stat. § 604.02 (1990).[1] Instead, the judge ruled that Ettinger could not be found at fault, and the jury was instructed to apportion solely the respective negligence of Schaper and Julson. The jury returned a special verdict finding Schaper 60 percent negligent and Julson 40 percent negligent. The trial judge then ordered Schaper to reimburse Ettinger in the amount of $57,000, an amount equal to 60 percent of the $95,000 in workers' compensation benefits paid to Julson, together with interest, costs, and disbursements.

On appeal to the Minnesota Court of Appeals, Schaper alleged two errors. First, Schaper argued that the trial judge erred by not requiring Ettinger to prove the reasonableness, necessity, or causal relationship of the benefits paid to the injury. Schaper sought to have two experts testify that Ettinger overpaid workers' compensation benefits to Julson. Second, Schaper argued that the trial judge erred by not submitting the issue of Ettinger's negligence to the jury. The court of appeals agreed with Schaper on both arguments and reversed the decision of the trial court.

Ettinger then sought review from this court, asking that we reverse the court of appeals and reinstate the judgment of the trial court. Ettinger first argues that the trial court was correct in ruling that the amount at stake was the amount of compensation benefits paid to Julson and that the measure of damages is not an issue for the jury. Second, Ettinger argues that the

1. Minn.Stat. § 604.02, subd. 1 states in part: "When two or more persons are jointly liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that each is jointly and severally liable for the whole award."

court of appeals erred in reversing the trial court's refusal to submit the issue of Ettinger's fault to the jury because the testimony at trial presented no factual issues of negligence on the part of Ettinger.

The issues raised on appeal are:

1. When an employer acquires a subrogation interest in a cause of action of its employee against a third-party tortfeasor because the employer paid workers' compensation benefits to the employee, must the employer prove the extent of damages?

2. Was it error for the trial court not to submit the issue of Ettinger's negligence to the jury?

█ The major dispute in this case concerns the measure of damages that Ettinger may recover from Schaper. Ettinger argues, and the trial court ruled, that damages recoverable from a third-party tortfeasor in a workers' compensation subrogation action are equal to the amount of compensation benefits paid to the employee. The practical effect of such a rule would be to require employers only to prove the degree of fault of the third party because the amount of damages would be set as a matter of law at the amount of benefits paid. Under such a rule, the third-party tortfeasor would be unable to contest the extent of its monetary liability beyond the sole exception of litigating the proportion of fault. The court of appeals reversed the trial court, holding instead that an employer in a subrogation action must prove the nature, extent, and causal relation of the damages. *M.W. Ettinger Transfer & Leasing Co. v. Schaper Mfg., Inc.*, 482 N.W.2d 796, 800 (Minn.App.1992).

Under Minnesota workers' compensation law, an employee injured at work has two possible causes of action against two possible defendants. First, a claim may be brought against the employer, against whom workers' compensation benefits are the sole remedy. Minn.Stat. § 176.031

(1990). Second, the employee may bring an action in negligence against any existent third-party tortfeasors. Minn.Stat. § 176.061, subd. 5 (1990). Such third-party negligence claims are often settled on a *Naig* basis wherein the employee recovers from the third party all damages not recoverable under workers' compensation, notifies the employer of the settlement negotiations, and expressly reserves the employer's right to be subrogated to the employee's negligence claim pursuant to Minn.Stat. § 176.061. *Naig v. Bloomington Sanitation*, 258 N.W.2d 891, 894–95 (Minn.1977).

Ettinger argues that damages recoverable under an employer's subrogation right to its employee's negligence claim are co-extensive as a matter of law with the amount of workers' compensation benefits paid to the employee. Ettinger states that Minn.Stat. § 176.061, subd. 10 [2] supports this assertion. The court of appeals noted that this argument has been rejected previously by this court. In *Allstate Insurance Co. v. Eagle–Picher Industries, Inc.*, 410 N.W.2d 324 (Minn.1987), two workers' compensation insurers sought indemnity from several asbestos manufacturers pursuant to subdivision 10. *Id.* at 325. The court held that subdivision 10 did not provide for a right to indemnity for workers' compensation benefits paid on account of an injury sustained as a result of exposure to asbestos. *Id.* at 327. In so ruling, this court explained the difference between traditional notions of contractual indemnity and indemnity pursuant to the workers' compensation statutes.

The rights afforded by the Workers' Compensation Act are incidents of the employment relationship and are contractual in nature. * * * The liability of the employer to pay compensation benefits clearly does not depend on whether the employee does or does not have a cause of action against a third party. The employer's liability exists in any event where the injury, including occupational

2. **"Subd. 10. Indemnity.** Notwithstanding the provisions of chapter 65B or any other law to the contrary, an employer has a right of indemnity for any compensation paid or payable pursuant to this chapter, including temporary total

compensation, temporary partial compensation, permanent partial disability, economic recovery compensation, impairment compensation, medical compensation, rehabilitation, death, and permanent total compensation."

disease, arose out of and in the course of employment, regardless of anyone's negligence. * * * Furthermore, the extent of the employer's obligation under the Workers' Compensation Act is not determined according to the common law measure of damages. * * *

It seems to us most unlikely that the legislature intended to shift the employer's obligations under the employment contract to third parties who are strangers to that contract in complete disregard of the principles of respondeat superior, comparative negligence, and the common law measure determinative of the nature and extent of damages recoverable in actions sounding in tort. * * *

*Id.* at 328 (citations omitted). In other words, in *Allstate,* we stated our opinion that the indemnity provision in the Workers' Compensation Act differed from traditional notions of contractual indemnity because there is no actual agreement for reimbursement between the parties. Because there is no actual agreement between the parties, traditional tort notions requiring the plaintiff to prove the extent of damages were not eliminated by the Workers' Compensation Act.

Ettinger argues that requiring an employer to prove the extent of damages in a subrogation action against a third-party tortfeasor would cause employers to contest payments of workers' compensation claims, thus delaying employees' receipt of benefits. Ettinger states that establishing the damages recoverable in the third-party action as being the amount of benefits paid or payable to the employee effectuates the intent of the legislature in enacting the Workers' Compensation Act, that intent being the "quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers who are subject to the provisions" of the Workers' Compensation Act. Minn. Stat. § 176.001 (1990).

While we agree with Ettinger that this is the intent of the Act, we disagree with any inference that such intent should be taken to mean that an employer may pay benefits to an employee and then automatically recover the amount of benefits paid from a third-party tortfeasor without allowing that third party to contest the nature and extent of the employee's damages. Instead, the Act puts the burden on employers as evidenced by the many penalty provisions which discourage employers from delaying or refusing to pay benefits. *See, e.g.,* Minn.Stat. § 176.82 (1990).

This court has previously ruled that workers' compensation statutes that apportion fault without allowing a party to contest the extent and measure of its fault violate the due process clause of the fifth and fourteenth amendments of the United States Constitution and Minn. Const. art. 1, § 8. *Carlson v. Smogard,* 298 Minn. 362, 369, 215 N.W.2d 615, 620 (1974). If this court were to accept Ettinger's suggested reading of indemnification under the Workers' Compensation Act, Schaper could very well raise the same due process challenge.

As the employee has the right to bring a negligence action against the third party, it is this right which the employer becomes subrogated to upon accruing the duty to pay workers' compensation benefits. Minn.Stat. § 176.061, subd. 5(a) (1990).[3] The employer derives its cause of action against the third-party tortfeasor by virtue of the claim that the employee had against that third person before the *Naig* settlement. As the plaintiff employee would have to prove the nature and extent of damages against the third party in a common law negligence action, so must the employer who is subrogated to its employee's right to bring such an action.

We have previously stated:

Precisely how the employer's subrogation suit against the tortfeasor is to be presented to a jury is not before us now, but this much is clear: in presenting its

---

**3.** "If the injured employee or the employee's dependents or any party on their behalf receives benefits from the employer * * * or institutes proceedings to recover benefits or accepts from the employer * * * any payment on account of the benefits, the employer * * * is subrogated to the rights of the employee or the employee's dependents or has a right of indemnity against a third party."

subrogation claim, the employer will require the assistance of the employee and will have to prove to the satisfaction of a jury not only the liability of the tortfeasor but the nature and extent of the employee's disability.

*Easterlin v. State,* 330 N.W.2d 704, 708 (Minn.1983). This statement is still a correct understanding of the mechanics of bringing a subrogation suit against a third-party tortfeasor under the Workers' Compensation Act. Although parties should be encouraged to settle third-party claims under the Workers' Compensation Act because benefits under the Act are limited to a certain percentage of wages whereas loss of income at common law can be fully recovered, a third party is entitled to its day in court and should it desire to contest the reasonableness of the payments made, it has the right to do so. We, therefore, affirm the court of appeals in its holding that Ettinger must prove the nature and extent of its employee's injury in its subrogation action against Schaper.

█ The second issue in this case is whether the trial court was correct to grant a directed verdict for Ettinger on the issue of its fault separate and apart from the fault of its employee Julson. The court of appeals disagreed with the trial court and reversed, stating that there appeared to be evidence which, if resolved in Schaper's favor, would allocate a portion of fault to Ettinger. *Ettinger,* 482 N.W.2d at 800.

█ A motion for a directed verdict presents a question of law for the trial court regarding the sufficiency of the evidence to present a fact question for the jury to decide. *J.N. Sullivan & Assoc., Inc. v. F.D. Chapman Constr. Co.,* 304 Minn. 334, 336, 231 N.W.2d 87, 89 (1975). In this case, although Schaper has offered to this court examples of possible negligence on the part of Ettinger, Schaper failed to offer evidence of such negligence at trial. Schaper did present evidence of negligence by Julson and Yobbie, but failed to present any testimony as to the negligence of Ettinger. Instead, Schaper argued that the jury could infer acts of negligence on the part of

Ettinger from the negligent acts of Julson and Yobbie that were offered. If such an inference were permissible, then a party could establish negligence of another party without allowing that second party an opportunity to cross-examine the statements of the witness upon which the inferred negligence is based.

Because Schaper failed to present evidence to the trial court that would establish any independent negligence on the part of Ettinger, the trial judge was correct not to allow the issue of Ettinger's fault to go to the jury. We, therefore, reverse the court of appeals and reinstate the decision of the trial court to grant Ettinger's motion for a directed verdict on its fault separate and independent from the fault of its employee. On the issue of whether Ettinger must prove the nature and extent of its employee's damages, however, we affirm the court of appeals, reverse the trial court, and remand to the trial court for a new trial on damages only.

The decision of the court of appeals is affirmed as modified by this opinion.

SIMONETT, J., concurs specially.

SIMONETT, Justice (concurring specially).

I join in the court's opinion, but because there will be a new trial on damages, I thought I might comment on a matter likely to reoccur at re-trial.

In this subrogation action, Ettinger is seeking to recover $95,000 from the defendant tortfeasor, this sum being the amount of workers' compensation benefits paid its injured employee. Ettinger (and Fireman's Fund, the compensation insurer) must prove its employee sustained injuries which resulted in medical expenses, lost wages past and future, and loss of earning capacity insofar as they duplicate the losses covered by the compensation benefits. If the jury's award is more than the amount of the subrogation claim, the court reduces the recovery to the amount of benefits paid.

Here defendant sought to call an expert on workers' compensation to testify that

Fireman's Fund overpaid temporary total disability, temporary partial disability, and permanent partial disability. The expert would also have testified that the compensation carrier was at fault in not obtaining an independent medical examination and in not attempting to find work for the employee. The trial court correctly rejected this testimony, but only because it had ruled damages were not a fact issue.

It is of no concern to the third-party tortfeasor if the workers' compensation carrier paid too much in benefits. The employer in this suit stands in the shoes of the employee, and the defendant tortfeasor is not in a position to revive the workers' compensation claim, which is a matter between the employee and the employer-insurer. The defendant tortfeasor is the defendant in a common law negligence action, and its defense on damages is whether the wage claim (not the benefit claim) is reasonable and caused by the injury and whether medical expenses were reasonably incurred and reasonable in amount.

The fact that benefits were paid and the amount paid should be made part of the record for the court's information. The jury, however, need only be told generally that Ettinger (who appears in court as the party plaintiff) has paid compensation benefits for which it seeks recovery, with no mention of specifics such as the amount. So long as the employer does not introduce the amount of benefits paid in an effort to lend credence to its common law damages claim, there is no reason for the defendant to bring in experts on workers' compensation. These third-party tort actions are complicated enough without complicating them further.