ZURICH AMERICAN INSURANCE
COMPANY, Respondent,

v.

Donald A. BJELLAND, Appellant.

No. A04–709.

Supreme Court of Minnesota.

Feb. 2, 2006.

Rehearing Denied March 6, 2006.

Michael D. Barrett, Andrea E. Reisbord, Cousineau, McGuire & Anderson, Chartered, Minneapolis, MN, for Bjelland.

Scott P. Drawe, Drawe & Heisick, Minneapolis, MN, for Zurich American Ins. Co.

## OPINION

MEYER, Justice.

In this appeal, we are called on to determine the meaning of Minn.Stat. § 176.061 (2004), the third-party liability section of the Workers' Compensation Act (the Act), as amended in 2000. The district court concluded that a workers' compensation insurer's recovery in a subrogation action against a third-party tortfeasor was measured by the employee's damages recoverable in the tort action. The court then adopted the parties' stipulation, agreed upon to facilitate appeal, that the reasonable value of the wrongful death damages was less than the reasonable value of the workers' compensation benefits paid or payable. On appeal, the court of appeals determined that the 2000 amendments allow the workers' compensation subrogee "unlimited recovery of provable damages." *Zurich Am. Ins. Co. v. Bjelland,* 690 N.W.2d 352, 356 (Minn.App.2004). Because we conclude that the 2000 amendments did not change the fundamental structure of third-party actions under the Act and that the employer's claim for reimbursement remains subrogated to the employee's claim for tort damages, we reverse.

The parties stipulated to the material facts in this case. On November 6, 2001, while driving in the course and scope of his employment with Associated Milk Producers, Inc., Eugene Bodeker was killed in a two-vehicle traffic accident. Appellant Donald Bjelland, driver of the other vehicle, ran a stop sign, striking Bodeker's vehicle.

Angeline Bodeker, Eugene Bodeker's wife, entered negotiations with Associated Milk Producers' insurer, respondent Zurich American Insurance Company, for workers' compensation benefits. Under the Act, a surviving spouse with no dependent children receives dependency benefits at 50 percent of the weekly wage of the employee at the time of the fatal injury for a period of 10 years. Minn.Stat. § 176.111, subd. 6 (2004). Zurich settled the dependency benefits claim for $92,382.95. Zurich also paid funeral bene-

fits of $8,255.83 and medical benefits of $3,680.22, for a total settlement of the workers' compensation claim of $104,319.

Angeline Bodeker then brought a suit against Bjelland under the Wrongful Death Act. Before trial, she and Bjelland entered into what is known as a *Naig* settlement. Such a settlement resolves the suit brought by an employee (or his dependents if the work accident is fatal), against a third party for damages such as pain and suffering or loss of consortium that are not compensable under workers' compensation. *Jackson v. Zurich Am. Ins. Co.*, 542 N.W.2d 621, 622 (Minn.1996) (citing *Naig v. Bloomington Sanitation*, 258 N.W.2d 891, 893 (Minn.1977)).[1] When an employee (or an employee's dependents) enters into a *Naig* settlement with a third-party tortfeasor, Minnesota law allows the employer or the employer's insurer to move ahead with the suit against a third-party tortfeasor to recover benefits that it has paid to the employee as a result of the tortfeasor's negligence. Minn.Stat. § 176.061, subd. 5(a); *Jackson,* 542 N.W.2d at 623. An employee who enters into a *Naig* settlement thereby relinquishes the statutory right to damages that are ultimately recovered from the third party for wage loss and other compensation provided by the employer under workers' compensation law. *Naig v. Bloomington Sanitation*, 258 N.W.2d 891, 894 (Minn. 1977).

Zurich commenced a subrogation action to recover the workers' compensation benefits paid and payable. On cross-motions for summary judgment on the measure of damages, Zurich argued that under the 2000 amendments to the third-party liability section of the Act, Bjelland should reimburse Zurich for the full amount of benefits paid. Four subdivisions of the section were supplemented with similar language in 2000. Act of April 27, 2000, ch. 447, §§ 4–7, 2000 Minn. Laws 1042, 1046–49 (codified at Minn.Stat. § 176.061, subds. 3, 5, 7, 10). Relevant to Zurich's argument, subdivision 5 was amended to read, in part:

> If the injured employee or the employee's dependents or any party on their behalf receives benefits from the employer or the special compensation fund or institutes proceedings to recover benefits or accepts from the employer or the special compensation fund any payment on account of the benefits, the employer or the special compensation fund is subrogated to the rights of the employee or the employee's dependents or has a right of indemnity against a third party *regardless of whether such benefits are recoverable by the employee or the employee's dependents at common law or by statute.*

*Id.* § 5, 2000 Minn. Laws at 1047–48 (codified at Minn.Stat. § 176.061, subd. 5) (amendment in italics).[2]

---

1. An employer or workers' compensation insurer also can settle pretrial, thereby "waiv[ing] any rights it might have to the employee's subsequent recovery, specifically, the right to claim a portion of the employee's recovery as a credit against future compensation payable." *Folstad v. Eder*, 467 N.W.2d 608, 612 (Minn.1991); *see* Minn.Stat. § 176.061, subd. 6(d) (allowing an employer to recover a credit for future compensation payable in a subrogated suit). *Folstad* involved an insurer, but in the context of the third-party liability provisions of Minnesota's

workers' compensation law, the rights of the employer and the employer's workers' compensation insurer, Zurich here, are coextensive. *Folstad*, 467 N.W.2d at 611 n. 3.

2. While the addition of essentially identical language to four subdivisions of section 176.061 indicates a common intended change, the appeal at hand implicates the change in the context of subdivision 5, which governs cumulative remedies. Minn.Stat. § 176.061, subd. 5. Subdivision 3 relates to situations where the third party and the em-

The district court denied Zurich's cross-motion for partial summary judgment seeking a determination that the proper measure of damages is the full amount of benefits Zurich had paid to Angeline Bodeker. The court simultaneously granted Bjelland's motion for partial summary judgment entitling him to a jury determination of his liability and damages. The court concluded that the 2000 amendments did not set the amount recoverable by Zurich at the total of benefits paid and payable, and that the amendments did not change the fundamental nature of the employer's claim as being subrogated to the employee's (that is, the amendments did not change the fact that the employer stands in the shoes of the employee to pursue a claim, even if the employee has removed himself from the suit by virtue of a *Naig* settlement).

To facilitate appeal, Bjelland and Zurich stipulated that: (1) if tried to a jury, the jury would find Bjelland was negligent and his negligence was a direct cause of the accident; and (2) if tried to a jury, the jury would find fair and reasonable wrongful death damages for medical expenses, funeral expenses, and loss of financial support to Angeline Bodeker in the amount of $48,336.05; and (3) $104,319 was the fair and reasonable value of workers' compensation benefits.[3]

The district court entered judgment for Zurich for $48,336.05, plus costs and disbursements, which was premised on the court's determination that the amount of Zurich's recovery is "limited to the amount of damages recoverable under the Wrongful Death Act." Zurich appealed to the court of appeals.

The court of appeals ruled that under the 2000 amendments to section 176.061 an insurer may recover from a third-party tortfeasor the full amount of workers' compensation benefits paid or payable. *Zurich*, 690 N.W.2d at 357. It based its ruling on the presumption that statutory amendments are meant to change laws. *Id.* at 356. The court determined that "either through the principle of statutory subrogation as defined by the workers' compensation amendments or the principle of indemnity, Zurich is entitled to recover, without limit, such damages as it may prove it is entitled to." *Id.* The court went on to state that the measure of Zurich's recovery was the full amount of workers'

ployer are engaged in a common enterprise. *Id.*, subd. 3. Subdivision 7, we have explained, provides a separate cause of action for the employer to recover medical benefits and other compensation paid when the employee does not meet tort thresholds in Minnesota's no-fault automobile insurance act, with damages subject to the formula found in subdivision 6 of the section allocating a tort recovery between the employee and employer. *Hodder v. Goodyear Tire & Rubber Co.*, 426 N.W.2d 826, 837–38 (Minn.1988). Finally, we have explained that the right of indemnity in subdivision 10 does not represent the traditional legal right "which inures to a person who has discharged a duty owed by him but which, as between himself and another, should have been discharged by the other," and, more important, that it does not grant the employer a cause of action separate from the injured employee's cause of action. *Allstate Ins. Co.*

*v. Eagle–Picher Indus., Inc.*, 410 N.W.2d 324, 328 (Minn.1987) (citing Restatement of Restitution § 76 (1937)); *see also Folstad*, 467 N.W.2d at 611 (noting that the indemnity provision reflects the fact that some third-party claims do not involve fault on the part of the employer).

**3.** We observe that in most cases the damage award in the employee's tort suit is enough to ensure that the employer is fully reimbursed for benefits paid. In this case, because Zurich was obligated under the statute to pay Angeline Bodeker 10 years of dependency benefits even though her husband was 66 years old and near the end of his working years, the total amount of benefits paid ($104,319) exceeded the stipulated wrongful death damages ($48,336.05).

compensation benefits paid, $104,319. *Id.* at 357. We granted review.

■ The sole issue presented on appeal is the interpretation of the third-party liability provisions of the Act in the wake of amendments made in 2000. We interpret statutes and case law de novo. *Am. Nat'l Gen. Ins. Co. v. Solum*, 641 N.W.2d 891, 895 (Minn.2002).

■ The first inquiry in statutory interpretation is whether the law is ambiguous. *See* Minn.Stat. § 645.16 (2004). If the words are clear and unambiguous, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.* Zurich argues the statute unambiguously allows a workers' compensation insurer the right to recover from a third-party tortfeasor the full amount of benefits paid or payable to the employee and the employer's right of recovery is no longer limited to the common law or wrongful death measure of damages. It maintains that the amendatory words of Minn.Stat. § 176.061—"regardless of whether such benefits are recoverable by the employee or the employee's dependents at common law or by statute"—enlarge the employer's right to recover from a third-party tortfeasor.

Bjelland also urges us to conclude that the statutory changes are unambiguous but argues a contrary meaning to the changes: the amendatory language does not enlarge the employer's right to recover from the third-party tortfeasor but rather, it expands the definition of what types of benefits *are eligible* to be recovered. Bjelland points to the unchanged portions of the statute in support of his position that the tortfeasor's liability remains essentially one of subrogation. As both parties' interpretations are plausible, we conclude the statute is not clear and free from all ambiguity.

■ If the words of a statute are not explicit, we interpret the statute's meaning by considering the intent of the legislature in drafting the law. Minn.Stat. § 645.16. We may rely on certain presumptions in ascertaining legislative intent. The first presumption we rely on in this case is that we presume that "the legislature intends the entire statute to be effective and certain." Minn.Stat. § 645.17(2) (2004). Further, we have held that the "provisions of Minnesota's workers' compensation statute should not be construed in isolation, but must be considered in light of related provisions of the statute." *Conwed Corp. v. Union Carbide Chems. & Plastics Co.*, 634 N.W.2d 401, 406 (Minn.2001) (citing *Allstate Ins. Co. v. Eagle–Picher Indus., Inc.*, 410 N.W.2d 324, 327 (Minn.1987)). There are two primary considerations in discerning legislative intent in this case: the contemporaneous legislative history and the consequences of a particular interpretation. *See* Minn.Stat. § 645.16(6), (7).

The contemporaneous legislative history provides no clear indication that the legislature intended to accomplish what Zurich asserts. The addition of the "regardless" language to subdivisions 3, 5, 7, and 10 was part of a package of reforms to the third-party liability section of the law that "clarifie[d] some laws that have been very confusing, confusing case law." Hearing on S.F. 3644, Sen. Jobs, Energy, & Cmty. Dev. Comm., 80th Minn. Leg., March 1, 2000 (statement of Beth Hargarten Minn. Dep't of Labor & Indus.). No specific cases were mentioned.[4] Describing the

4. What little testimony there was regarding the 2000 amendments was given to the Senate Jobs, Energy, and Community Development Committee:

[L]anguage is added which will allow an employer who is required to pay workers' compensation benefits as a result of negligence of a third party the right to recover

statutory amendments as "clarif[ying]" undermines Zurich's position that the amendments were intended to effect the substantial change to the operation of an employer's right of subrogation.

Given that little legislative intent can be inferred from the legislative history, we consider the consequences of a particular interpretation. In cases decided before the 2000 amendments, we have consistently maintained that section 176.061, subdivision 5, grants an employer a right of subrogation, not a right of indemnity—that is, the employer steps into the shoes of the employee to pursue the employee's tort claim against the third-party tortfeasor. *Kaiser v. N. States Power Co.*, 353 N.W.2d 899, 903 (Minn.1984) (citing *Metro. Transit Comm'n v. Bachman's*, 311 N.W.2d 852, 853 (Minn.1981)). By its terms, subdivision 5 continues to apply to events creating a *"legal liability* for damages on the part of a party other than the employer." Minn.Stat. § 176.061, subd. 5 (emphasis added). We have indicated that this language restricts the application of the section to tort claims against third parties, affirming that the employer's right of subrogation may only be asserted against damages recoverable by the employee in a third-party claim. *See Minn. Brewing Co. v. Egan & Sons Co.*, 574 N.W.2d 54, 59–60 (Minn.1998) (citing *Janzen v. Land O'Lakes, Inc.*, 278 N.W.2d 67 (Minn.1979) (explaining that "legal liability" refers to tort liability)). Interpreting the amendments as replacing this measure with a full

right of recovery for the employer conflicts with the meaning of the unchanged language of the statute. Also, the section continues to state that the employer is "subrogated to the rights of the employee." Minn.Stat. § 176.061, subd. 5(a).

More importantly, the assertion that the legislature intended to alter the fundamental nature of the employer's cause of action against the third party is belied by the fact that the legislature did not amend Minn. Stat. § 176.061, subd. 6, the distribution formula that allocates a recovery from a third party between the employer and employee. Instead, the formula continues to distribute recovery along the lines of a well-drawn subrogation statute, with "the third party paying what it would normally pay if no compensation question were involved." *Conwed,* 634 N.W.2d at 412 (quoting 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 116.02 (2000)). Zurich's interpretation of the 2000 amendments could seriously impede the operation of the distribution formula, running counter to our presumption that the entire statute be given effect.

■■ In ascertaining legislative intent, we also presume that "when a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language." Minn.Stat. § 645.17(4) (2004). The court of appeals based the employers' right of indemnity on language of section

all benefits it has paid because of that negligence, regardless of whether those benefits were recoverable by common law or not. Hearing on S.F. 3644, Sen. Jobs, Energy, & Cmty. Dev. Comm., 80th Minn. Leg., March 1, 2000 (statement of Beth Hargarten, Minn. Dep't of Labor & Indus.). The 2000 testimony virtually mirrors a statement given during the 1999 legislative session by the senate author of the bill, Sen. Steve Novak, when the same amendments to section 176.061 were

introduced the first time. *See* Hearing on S.F. 1848, Sen. Jobs, Energy, & Cmty. Dev. Comm., 79th Minn. Leg., March 19, 1999. The statement tends to support Zurich's argument that the employer can recover the full amount of benefits paid, though the statement is not clear in that regard; "all benefits" could also indicate that "all kinds of benefits" paid or payable by an employer are eligible for recovery.

176.061, subdivision 10, that was not amended. *Zurich*, 690 N.W.2d at 356. This court has before construed the indemnity language of section 176.061 and held that the right of indemnity referred to in the statute is more limited than common-law indemnity:

> It must be observed * * * that the right of indemnity with which we are here concerned is not the equitable remedy of indemnity but is rather a statutory cause of action incorporated into the Workers' Compensation Act, a statutory system of compensation for workers disabled by reason of injury arising out of and in the course of employment.

*Allstate Ins. Co. v. Eagle–Picher Indus., Inc.*, 410 N.W.2d 324, 327 (Minn.1987). Further, we noted with regard to the subdivision 10 indemnity provision,

> [i]t seems to us most unlikely that the legislature intended to shift the employer's obligations under the employment contract to third parties who are strangers to that contract in complete disregard of the principles of respondeat superior, comparative negligence, and the common law measure determinative of the nature and extent of damages recoverable in actions sounding in tort.

*Id.* at 328. The court of appeals' interpretation would significantly shift the burden for the financial consequences of workplace accidents from employers onto third-party tortfeasors. Such a change would mean that third-party tortfeasors would face significantly different liability if they cause injury to someone in the course and scope of employment than they would otherwise. We reaffirm our conclusion in *Allstate* that the indemnity language in subdivision 10 of section 176.061 was not intended by the legislature "to shift the employer's obligations under the employment contract to third parties who are strangers to that contract in complete disregard" of common law damages. *Allstate*, 410 N.W.2d at 328.

■ It seems to us fairly evident, then, that the 2000 amendments have not modified the measure of damages against which the employer may assert a right of recovery. In the absence of a definitive indication from the legislature that it meant to replace or otherwise enlarge the employer's cause of action against the third party beyond that of subrogation, we reaffirm the fundamental principle that in a subrogation suit the employer has no greater rights than those of the employee.

Reversed and remanded to the district court for reinstatement of judgment.

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.