ELIZABETH SCHOENBORN v. STATE BANK OF RICHMOND.

ELIZABETH SCHOENBORN v. STATE BANK OF RICHMOND AND ANOTHER.[1]

April 25, 1924.

No. 23,861.

**Question for jury whether agency exists.**

1. As a general rule, unless the evidence is conclusive, whether an agency exists is a question for the jury. It was a jury question under the evidence detailed in the opinion.

**Plaintiff not estopped by negligence from denying responsibility for her agent.**

2. The evidence did not conclusively establish a state of facts requiring the application of the rule that a person whose negligent con-

[1]Reported in 198 N. W. 801.

duct creates a false impression respecting the authority of another to represent him will not be heard to deny responsibility for the acts of the professed agent when a third person seeks to hold the alleged principal on the ground that, in dealing with the alleged agent, he relied on the appearance of authority with which he had been clothed.

**Plaintiff not chargeable with ratification of agent's acts.**

3. Under the evidence the jury might properly find that plaintiff could not be charged with the acts of her alleged agent on the theory of ratification.

**Plaintiff not chargeable with accepting benefits of unauthorized act.**

4. The jury might also find that she could not be charged on the theory of the acceptance and retention of the benefits of the unauthorized act of another.

Two actions in the district court for Stearns county, one to recover possession of a promissory note for $15,000 and the other against the bank and Gerhard Braegelmann to recover possession of a promissory note for $4,500, and the mortgages securing the same, or for their value. The cases were tried together before Nye, J., who when plaintiff rested denied defendants' motion to dismiss the actions and at the close of the testimony their motion for a directed verdict, and a jury which returned a verdict for $20,469.50. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*Donohue & Quigley,* for appellants.

*J. B. Pattison,* for respondent.

LEES, C.

Plaintiff brought two actions to recover possession of two notes and mortgages. By consent the actions were consolidated for trial. The jury returned a verdict in plaintiff's favor. Defendants have appealed from a denial of their motion in the alternative for judgment or a new trial.

A note and mortgage of $15,000 are involved in the action against the bank alone, and a note and mortgage of $4,500 in the action in

which Gerhard Braegelmann, its president, is joined as a defendant.

At the time of the transactions in question, plaintiff and her husband resided on a farm near Fresno, Montana. C. R. Thomas was vice president, and Lee H. Dierdorff cashier, of the First National Bank of Fresno. William Moening was cashier of the defendant bank and in general charge of its business. Plaintiff owned a farm of 320 acres near Richmond in Stearns county, subject to a mortgage of $4,000, known as the Merz mortgage. On March 10, 1920, she gave Dierdorff an option to purchase the farm for $28,000. Thereafter Dierdorff and Thomas went to Richmond and made a sale of the farm to John Freimuth for $31,000. The consideration was made up of the following items: A contract held by Freimuth for the purchase of 120 acres of land in Stearns county from a man named Hacker, which was valued at $2,300; a house and lot in Milford, Iowa, valued at $5,000; a cash payment of $1,000 and an additional payment of $2,631.50 to be made later; a number of small items aggregating $568.50; a first mortgage of $15,000 on plaintiff's farm, to be executed later; and a $4,500 mortgage on land near Milford, Iowa, known as the Meister mortgage.

After agreeing upon the terms of the sale to Freimuth, Thomas procured from plaintiff and her husband a warranty deed of the farm, with a blank left for the insertion of the name of the grantee. The deed made no reference to the Merz mortgage. At the same time a so-called escrow contract was executed, to which plaintiff, her husband, and the First National Bank of Fresno were parties. It recited that the deed had been executed and deposited with the bank, to be delivered to Dierdorff or order upon the payment of $8,500 in cash on or before March 1, 1921, the assignment to plaintiff of the Meister mortgage, and the delivery of a $15,000 mortgage on the Stearns county farm, to be executed by the person to whom the deed ran. The final provision reads as follows:

"It is understood in consideration of the deposit of this deed that as soon as certain property taken in trade by Lee H. Dierdorff on sale of this 320 acres on contract is sold by him that net proceeds shall be immediately paid to first parties as part of the $8,500 cash

payment, the intention being that this cash payment of $8,500 shall be made as soon after the date of this agreement as possible. Unless payment of $8,500 is made before Nov. 1, 1920, first parties shall receive in addition 6% interest on so much thereof as is not paid, until paid. Taxes payable in year 1920 to be paid by first parties. Proceeds of sale of traded property above the $8,500 cash herein mentioned to be retained by Lee H. Dierdorff in payment of his commission and expenses and of other agent's commissions, all above payments to first parties to be net to them."

On June 18, after these instruments had been executed, Dierdorff returned to Richmond and procured from Freimuth an assignment in blank of the Meister mortgage, and an assignment to himself of the Hacker contract for deed. Plaintiff asserts that at the same time Dierdorff borrowed $3,500 from the Richmond bank and gave his individual note for the amount of the loan, but this is denied by Moening.

On June 21, the Fresno bank mailed the deed to the farm to the Richmond bank, with a letter of instructions signed by Dierdorff. His directions were as follows:

"On receipt of same you will deposit to the credit of this bank with Midland National Bank of Minneapolis $1,000; and you will hold in your bank $2,931.50 cash payment of Freimuth, computed as per your letter of June 2, and also $3,500 proceeds of my note subject to the further instructions following concerning such cash; you will also hold assignment of contract on 120 acres, note and mortgage of $4,500, and assignment, also $15,000 note and mortgage to be executed by parties to whom deed is later made, in escrow pending the completion of deal. * * *

| | |
|---|---:|
| Deposit in Midland National for our credit | $1,900.00 |
| Issue CD at 6% to be held by you to pay Mtg. | 4,000.00 |
| Issue CD or Cashier Check as int. to July 1 on $4,000 approximately | 112.70 |
| Deposit balance in your bank to my credit to cover expenses, etc. | 118.80 |
| | $6,131.50 |

and you will then release to us all proceeds of sale of Milford house, but you will hold assignment of $4,500 mortgage and assignment of 120 contract as collateral to my note of $3,500, if the same is not paid before that:

"This is as per our arrangement the other day, but we take this means of placing same in writing for all concerned."

On July 1 Dierdorff went to Richmond for the third time, leaving without completing the transfer of plaintiff's farm. The transfer was completed by Moening, who inserted the name of Joseph Reitmeier as grantee in the deed, at Freimuth's request, and had the deed placed on record. He took from Reitmeier a $15,000 mortgage on the farm, running to plaintiff, had it recorded and retained it at his bank.

On July 8, Dierdorff made a report in writing to plaintiff's husband. It showed that $3,990 was the amount paid to and expended for her; that $4,240 was held to pay the Merz mortgage when it fell due, and that a mortgage for $15,000 and another for $4,500 were to be turned over when settlement was made on March 1, 1921. The Richmond bank then held both mortgages, claiming them as collateral to Dierdorff's note of $3,500, but plaintiff was ignorant of that fact.

The Richmond bank paid the Merz mortgage, obtained a satisfaction on January 28 and recorded it on March 22.

On March 21, in reply to a letter of inquiry from plaintiff's attorney, Moening wrote in substance that Dierdorff had taken considerable property in trade for plaintiff's farm and had expected to turn it prior to March 1 "and in that way get out from in under the heavy load that he was under and square up with Mr. Schoenborn. * * * In order to swing this deal and make arrangements for the loan that was due on the Schoenborn land on January 12, 1921, Mr. Dierdorff was obliged to make a loan with us of $3,500, with the understanding that we were to take up this mortgage when due, and leaving as security for said loan the $4,500 Iowa mortgage and the $15,000 Reitmeier-Schoenborn mortgage, which we still hold as collateral to said $3,500 loan."

After receiving the attorney's letter, Moening inserted Braegelmann's name in the assignment of the Meister mortgage and recorded the assignment. On April 6 he wrote Dierdorff, inclosing a copy of his letter to plaintiff's attorney, with the request that it be kept "confidential as you will notice we were trying to protect you as much as possible in this deal." Dierdorff replied that the $15,000 mortgage had not been put up as collateral and asked that it be surrendered so he could secure an extension of time from plaintiff, which would enable him "to work out something on the remainder of the deal  *  *  *  to our mutual satisfaction."

In September, 1920, Dierdorff's note was taken up by substituting for it his new note of $3,000 and one of $500 executed by Thomas. The Richmond bank claims the Reitmeier and Meister mortgages as security for these notes.

The theory of the defense is that plaintiff employed Dierdorff to sell her farm; that in order to give Reitmeier a clear title it was necessary to pay the Merz mortgage; that the property taken in exchange for the farm was not of sufficient value to pay the mortgage and provide for the payment Dierdorff was to make to plaintiff; that he induced the bank to advance $3,500 to him in the belief that he was plaintiff's agent; and that by entrusting the deed to the Fresno bank, from whom the Richmond bank received it, plaintiff clothed Dierdorff with apparent authority to secure funds to pay the Merz mortgage and make good the covenant against encumbrances contained in the deed. The court submitted the case to the jury on the theory that the defense could not be sustained unless Dierdorff was plaintiff's agent for some purpose instead of the purchaser of her farm.

It is contended that the language of the escrow contract conclusively establishes Dierdorff's agency. But it must be read in connection with Dierdorff's and Moening's letters. The evidence as a whole left the existence of the alleged agency in doubt, and hence the question was properly submitted to the jury. 1 Dunnell, Minn. Dig. § 243.

It is well settled that a person whose negligent conduct creates a false impression respecting the authority of another to represent

him and leads a third person into dealing with the supposed agent on the strength of his apparent authority, will not be heard to deny responsibility for the acts of the professed agent. This is merely an application, in the law of agency, of the doctrine of equitable estoppel. Schauble v. Hedding, 138 Minn. 187, 164 N. W. 808. The defendant bank seeks to bring itself within the scope of the principle. To come within it, the bank must have parted with its money on the supposition that Dierdorff had authority to borrow it for plaintiff and she must have done something to clothe him with the appearance of authority to procure the loan in her behalf. She knew that her deed was to run to the person to whom Dierdorff had sold the farm and that the Merz mortgage would have to be paid, but she did not entrust the deed to Dierdorff; she entrusted it to the Fresno bank for delivery to him when he performed his part of the escrow contract. Disregarding its duty to her, the Fresno bank permitted Dierdorff to take the deed without fulfilling his agreement with her. Under the evidence the jury could properly find that the Richmond bank either dealt with Dierdorff individually and not as agent for the plaintiff, or that, when it made the loan, it was not justified in assuming from anything plaintiff had done or said that he had power to borrow money for her and pledge her mortgages as security for the loan. There is persuasive evidence that the money was borrowed on June 18, several days before the bank received the deed. It could not have relied on Dierdorff's possession of the deed if the loan was made at that time. Moening knew the Schoenborns, but made no inquiry to ascertain whether they had authorized Dierdorff to sell their farm or borrow money on their account. He took a note signed by Dierdorff individually and not as plaintiff's agent. There was little to warrant the belief that he was plaintiff's agent except his statement to that effect, and, in accepting it as true, the bank acted at its peril. Hedding v. Schauble, 146 Minn. 95, 177 N. W. 1019.

The transaction had by plaintiff with Dierdorff and his bank on July 8, 1920, gives rise to the question of ratification, if in fact Dierdorff professed to act as plaintiff's agent when he gave his note to the Richmond bank. Mitchell v. Minnesota Fire Assn. 48 Minn.

278, 51 N. W. 608. When plaintiff received his statement and the money, she knew nothing about his transactions with the Richmond bank. The jury might well find that she accepted the money without full knowledge of all the material facts and that this essential element of ratification was lacking. 1 Dunnell, Minn. Dig. § 181.

The Merz mortgage had to be paid to make good the covenants in plaintiff's deed to Reitmeier. The bank's payment inured to her benefit, hence it is urged that she is estopped from disclaiming responsibility for the loan.

It is well settled that, when one accepts and retains the benefits of the unauthorized act of his agent, he cannot repudiate the act; by retaining its fruits he assumes the same responsibility as though it had been done with authority. Dunnell, Minn. Dig. § 184. An excellent exposition of the rule will be found in Calhoun v. McCrory 'P. & R. Co. 129 Tenn. 651, 168 S. W. 149, 52 L. R. A. (N. S.) 571, and in Bannatyne v. MacIver, 3 Ann. Cas. 1143. The verdict indicates that the jury concluded that Dierdorff was not plaintiff's agent. Moreover the evidence showed conclusively that plaintiff received no part of the proceeds of the loan; Dierdorff or the bank used the money to pay the mortgage. She was never in a position where it was within her power to accept or reject the proceeds of the loan. She has done nothing to create an estoppel. Herein is the difference between this case and Johnson v. Ogren, 102 Minn. 8, 112 N. W. 894; Fuller v. Johnson, 139 Minn. 110, 165 N. W. 874, and Roseberry v. Hart-Parr Co. 145 Minn. 142, 176 N. W. 175.

Plaintiff prosecutes this action on the theory that Dierdorff had purchased and resold the farm and that she was to receive the notes and mortgages in suit in part payment of the purchase price. If Dierdorff purchased the farm, it was his duty to discharge the Merz mortgage. The turning point in the case is reached when we come to the one vital question already considered: Was Dierdorff dealing in an individual or in a representative capacity? As bearing upon the question, the attention of the jury was invited to the legal consequences of receiving and accepting the benefits of a transaction not authorized by the recipient. That is as far as the court could

go, for, in the final analysis, the evidence made the question one for the jury.

The bank is not seeking to have the lien of the mortgage restored to the land for its protection, as in Henry v. Hutchins, 146 Minn. 381, 178 N. W. 807. It seeks to impress a lien for the money it advanced upon securities which belong to plaintiff. Its right to a lien depends on Dierdorff's alleged authority to represent her. Holding, as we do, that this was a question for the jury, that the verdict is supported by the evidence and that it was returned under proper instructions covering every point in issue, there can be no escape from the conclusion that the motion for a new trial was properly denied.

Order affirmed.