**MARINE CREDIT UNION,**
**Respondent,**

v.

**Anne K. DETLEFSON–DELANO,**
**Appellant,**

**Jack Antonio, Respondent.**

**No. A11–1925.**

Supreme Court of Minnesota.

May 22, 2013.

Thomas B. Olson, Shaun D. Redford, Olson & Lucas, P.A., Edina, MN, for respondent Marine Credit Union.

Dwight D. Luhmann, David A. Joerg, P.A., Preston, MN, for appellant.

OPINION

PAGE, Justice.

This appeal arises out of a district court action brought by respondent Marine Credit Union (MCU) seeking to foreclose on the homestead that appellant Anne Detlefson–Delano and her husband Jack Antonio own.[1] The district court granted summary judgment to Detlefson–Delano after concluding that the mortgage Detlefson–Delano signed with MCU is void under Minn.Stat. § 507.02 (2012) because it was not also signed by Antonio. The court of

appeals reversed, holding that the mortgage was valid despite the absence of Antonio's signature because Antonio had quitclaimed all of his interest in the homestead property to Detlefson–Delano before the mortgage was executed. We hold that the mortgage at issue here does not meet any of the statutory exceptions to the signature requirement in section 507.02 and that Antonio's quitclaim deed did not constitute an explicit waiver of his rights under the homestead statute. Therefore, we reverse.

In December 1994, Detlefson–Delano and her then-husband D.D. acquired property in Harmony, Minnesota. In 2003, Detlefson–Delano and D.D. divorced, and Detlefson–Delano was awarded sole ownership of the property. In 2005, Detlefson–Delano married Antonio, who began living on the property along with Detlefson–Delano and her two children. MCU does not dispute that the property became Antonio's homestead when he and Detlefson–Delano married.

In the summer of 2007, Detlefson–Delano and Antonio listed the property for sale with a real estate agent. According to Detlefson–Delano, the real estate agent asked that Antonio execute a quitclaim deed transferring his interest in the property to Detlefson–Delano in order to facilitate a sale of the property. On July 24, 2007, Antonio signed and delivered a quitclaim deed to Detlefson–Delano. The deed was recorded the following day, transferring "all the right, title, interest and claim" that Antonio had in the property to Detlefson–Delano.

When the property did not sell, Detlefson–Delano approached MCU about refinancing. According to Detlefson–Delano, Antonio thought that refinancing the

---

1. Antonio has not participated in this case since MCU first commenced its action in the district court. Antonio was listed as a respon-dent in the court of appeals and has retained that designation in the present appeal.

property was necessary, and on January 18, 2008, Detlefson–Delano signed an $84,000 note secured by a mortgage on the property in favor of MCU. MCU did not obtain Antonio's signature on either the note or the mortgage. The record indi-cates that the loan officer who made the loan for MCU was aware at the time that Antonio had previously executed a quitclaim deed to Detlefson–Delano and that Detlefson–Delano was married to Antonio. The loan officer claims that Detlefson–Delano led him to believe that Antonio had abandoned her and was no longer living in the area. Detlefson–Delano claims that MCU specifically told her that Antonio did not need to attend the mortgage closing. At the time this action was filed in the district court, Detlefson–Delano was living on the property with her two children, but she and Antonio have been estranged since sometime in 2009.

In October 2009, Detlefson–Delano defaulted on the note, which resulted in MCU commencing this foreclosure action. Detlefson–Delano counterclaimed, alleging that the mortgage is void pursuant to Minn.Stat. § 507.02 because it was not signed by Antonio. In its answer to the counterclaim, MCU asserted that the mortgage is valid because Antonio "agreed to [its] terms" by quitclaiming his interest in the property to Detlefson–Delano. MCU also amended its complaint and asserted that Detlefson–Delano should be equitably estopped from contesting the validity of the mortgage.

MCU moved for summary judgment. Finding no genuine issues of material fact, the district court denied MCU's motion and instead granted summary judgment to Detlefson–Delano as a matter of law. In doing so, the district court concluded that Detlefson–Delano was not estopped from asserting her claim and that the mortgage was void under Minn.Stat. § 507.02. The court also concluded that the quitclaim deed did not operate as a waiver of Antonio's homestead rights because (1) the deed was given for the purpose of listing the property for sale, (2) Antonio was living at the property and thus asserting his homestead rights when the mortgage was executed, and (3) the quitclaim deed was executed and delivered "subsequent to the execution of the mortgage."[2]

The court of appeals reversed, holding that the mortgage is valid even though Antonio had not signed it. *Marine Credit Union v. Detlefson–Delano*, 813 N.W.2d 429, 433 (Minn.App.2012). According to the court, because Antonio's quitclaim deed was a complete transfer of all of his interest in the property to Detlefson–Delano, Antonio did not retain any homestead interest and, accordingly, only Detlefson–Delano's signature was required to convey the property. *Id.* at 432–33. The court also held that the district court's finding that the quitclaim deed was executed after the mortgage was clearly erroneous. *Id.* at 431. Notably, MCU did not pursue its equitable estoppel argument in the court of appeals. *Id.* at 431 n. 1.

**2.** MCU filed a motion for a new trial or, in the alternative, for amended findings and a revised order in part to clarify that the court's grant of summary judgment to Detlefson–Delano did not release her from liability on the note. In response, the district court replied that it was "satisfied with its decision" and invited MCU to amend its complaint if it sought a judgment on Detlefson–Delano's lia-bility on the note aside from the validity of the mortgage. MCU subsequently filed an amended complaint requesting judgment against Detlefson–Delano for the outstanding amount of the loan. In response, the district court issued a judgment against Detlefson–Delano in favor of MCU in the amount of $107,215.63. This judgment is not at issue on appeal.

We granted Detlefson–Delano's petition for review on the sole issue of whether a quitclaim deed, transferring homestead property from one spouse to another, negates the requirement set out in Minn. Stat. § 507.02 that both spouses must sign a conveyance of the homestead to a third party. We denied MCU's petition for conditional cross-review on the issue of whether Detlefson–Delano is equitably estopped from contesting the validity of the mortgage.

## I.

■ Before Minnesota achieved statehood, the Territory of Minnesota enacted a homestead exemption statute that shielded homestead property from "sale on execution, or other process of a court." Rev. Terr. Stat., ch. 71, § 93 (1851). When Minnesota entered the Union, the homestead exemption was incorporated into the Minnesota Constitution and it remains there today. Minn. Const. of 1857, art. I, § 12. In relevant part, Article I, Section 12, provides that a "reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability." The purpose of the homestead exemption is to "preserve the homestead to the family even at the sacrifice of just demands." *Holden v. Farwell, Ozmun, Kirk & Co.*, 223 Minn. 550, 558–59, 27 N.W.2d 641, 646 (1947). Indeed, in order to ensure "a stable and independent citizenry and thereby promote the public welfare, it has always been the policy of the law to protect with jealous zeal the homestead right of the citizen." *Id.* at 558, 27 N.W.2d at 646.

The Legislature has enacted various statutes implementing the constitutional directive. Minnesota Statutes § 510.01 (2012) defines the homestead as the "house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of area and value hereinafter limited and defined." Minnesota Statutes § 510.02 (2012) further provides that the homestead exemption shall be limited to 160 acres or less, and shall not exceed $300,000, or $750,000 if the homestead is primarily used for agricultural purposes, subject to periodic adjustment of the dollar amounts in the manner set forth in Minn. Stat. § 550.37, subd. 4a (2012). The exemption extends to the debts of both spouses even if only one spouse holds legal title to the homestead property. *See* Minn.Stat. § 510.04 (2012).

Consistent with the purpose of preserving the homestead to the family, Minnesota law has, at least since 1865, provided that no conveyance of the homestead by a husband is valid unless "the wife joins in the deed of conveyance." Minn. Gen.Stat., ch. 68, § 5 (1865). That requirement, which is currently codified at Minn.Stat. § 507.02, is now gender-neutral and provides:

> If the owner is married, no conveyance of the homestead, except a mortgage for purchase money under section 507.03, a conveyance between spouses pursuant to section 500.19, subdivision 4, or a severance of a joint tenancy pursuant to section 500.19, subdivision 5, shall be valid without the signatures of both spouses. A spouse's signature may be made by the spouse's duly appointed attorney-in-fact.

The statute further provides that "[a] spouse, by separate deed, may convey any real estate owned by that spouse, except the homestead, subject to the rights of the other spouse therein; and either spouse may, by separate conveyance, relinquish all rights in the real estate so conveyed by the other spouse." Minn.Stat. § 507.02. We have consistently held that when no exception to section 507.02 applies, a

conveyance of the homestead by a married person without the signatures of both spouses is "not merely voidable but is void." *Dvorak v. Maring,* 285 N.W.2d 675, 677 (Minn.1979); *accord Bozich v. First State Bank of Buhl,* 150 Minn. 241, 242, 184 N.W. 1021, 1021 (1921). A conveyance "includes every instrument in writing whereby any interest in real estate is created, aliened, *mortgaged,* or assigned or by which the title thereto may be affected in law or in equity." Minn.Stat. § 507.01 (2012) (emphasis added).

II.

The principal dispute in this case is over what effect, if any, Antonio's quitclaim deed to Detlefson–Delano has on the statutory requirement that he sign any conveyance of the homestead in order for the conveyance to be valid.[3] On appeal, Detlefson–Delano argues that Antonio's quitclaim deed in her favor only conveyed Antonio's legal interest in the property, not his interest in the homestead, and therefore did not negate the separate requirement that he sign a conveyance of the homestead. MCU asserts that Antonio was not required to sign the mortgage because the quitclaim deed was both a conveyance of the property and a waiver of

his homestead rights. We conclude that MCU's argument fails because the mortgage at issue here does not meet any of the statutory exceptions to the signature requirement set out in section 507.02 and because the quitclaim deed did not constitute an explicit waiver of Antonio's rights under the homestead statute.

On appeal from summary judgment, we determine "whether there are any genuine issues of material fact, and whether the lower court erred in its application of the law." *Olmanson v. LeSueur Cnty.,* 693 N.W.2d 876, 879 (Minn.2005). The parties' dispute presents a question of statutory interpretation, which we review de novo. *Auto–Owners Ins. Co. v. Second Chance Invs., LLC,* 827 N.W.2d 766, 771 (Minn.2013). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2012). "We determine legislative intent primarily from the language of the statute itself." *Brayton v. Pawlenty,* 781 N.W.2d 357, 363 (Minn.2010) (citation omitted) (internal quotation marks omitted). Our first inquiry is whether the statute is ambiguous. *Zurich Am. Ins. Co. v. Bjelland,* 710 N.W.2d 64, 68 (Minn.2006). When a

---

**3.** MCU also argues that Detlefson–Delano lacks standing to bring an action under section 507.02 to challenge the validity of the mortgage because she waived her homestead rights by signing the mortgage. MCU further suggests that Detlefson–Delano lacks standing because Minn.Stat. § 507.02 is intended to protect the spouse who did not sign the conveyance of the homestead. MCU failed to raise the issue of standing in the court of appeals or in its response to Detlefson–Delano's petition for review. "However, an objection to want of standing goes to the existence of a cause of action, is jurisdictional, and may be raised at any time." *State by McClure v. Sports & Health Club, Inc.,* 370 N.W.2d 844, 850 (Minn.1985) (citation omitted) (internal quotation marks omitted). Standing to bring an action can be conferred in two ways: "ei-

ther the plaintiff has suffered some 'injury in fact' or the plaintiff is the beneficiary of some legislative enactment granting standing." *Enright v. Lehmann,* 735 N.W.2d 326, 329 (Minn.2007) (quoting *Snyder's Drug Stores, Inc. v. Minn. State Bd. of Pharmacy,* 301 Minn. 28, 31–32, 221 N.W.2d 162, 165 (1974)). To demonstrate an "injury-in-fact," the plaintiff must show "a concrete and particularized invasion of a legally protected interest." *Id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). We reject MCU's standing argument because MCU's attempt to foreclose Detlefson–Delano's home constitutes an injury-in-fact. Therefore, we conclude that Detlefson–Delano has standing to challenge the validity of the mortgage under section 507.02.

statute's language is unambiguous, our role is to give effect to the statute's plain meaning. *Tuma v. Comm'r of Econ. Sec.,* 386 N.W.2d 702, 706 (Minn.1986). If the language as applied is "clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16.

▇▇▇ MCU first argues that Antonio was not required to sign the mortgage because the quitclaim deed transferring his interest in the homestead to Detlefson–Delano fits within an exception to the signature requirement because it was a conveyance between spouses. Minnesota Statutes § 507.02 unambiguously provides, in relevant part, that "[if] the owner is married, no conveyance of the homestead ... shall be valid without the signatures of both spouses" unless one of the statutory exceptions applies. The mortgage at issue here is a conveyance separate from the quitclaim deed between Antonio and Detlefson–Delano and must independently fit under one of the statutory exceptions in order to be valid without the signatures of both spouses. It is not a mortgage for purchase money under section 507.03,[4] nor is it a conveyance between spouses pursuant to section 500.19, subdivision 4.[5] Finally, it does not involve a severance of a joint tenancy pursuant to section 500.19, subdivision 5.[6] Therefore, under the plain language of section 507.02, the absence of

Antonio's signature on the mortgage renders it void unless Antonio had expressly waived his rights under the homestead statute before Detlefson–Delano executed the mortgage. *See Dvorak,* 285 N.W.2d at 677.

▇▇▇ MCU also argues that the mortgage is valid without Antonio's signature because the quitclaim deed transferring Antonio's interest in the homestead to Detlefson–Delano waived Antonio's homestead rights. Clearly, Detlefson–Delano had the right to convey the real estate that she owned. However, under the second paragraph of section 507.02, which provides that a "spouse, by separate deed, may convey any real estate owned by that spouse, *except the homestead,* subject to the rights of the other spouse therein," Detlefson–Delano had no right to convey the homestead unilaterally. Minn.Stat. § 507.02 (emphasis added). While section 507.02 does not specifically provide that a waiver of one spouse's homestead rights is an exception to the signature requirement, we have said that homestead rights may be waived even though they are constitutional in nature. *See Argonaut Ins. Co. v. Cooper,* 261 N.W.2d 743, 744 (Minn.1978). However, a party may waive those rights only "by an act which evidences an unequivocal intention to do so." *Id.* The presumption is against such a waiver.

**4.** A mortgage for purchase money under Minn.Stat. § 507.03 (2012) exists when "a married individual purchases real property during marriage and mortgages the real property to secure the payment of the purchase price or any portion of it."

**5.** Minnesota Statutes § 500.19, subd. 4(b) (2012), provides that, "[s]ubject to section 507.02 specifying when both spouses must join in a conveyance of their homestead, conveyances between spouses are allowed ... to the same extent as those between unmarried persons."

**6.** A severance of a joint tenancy by a joint tenant is legally effective if "(1) the instrument of severance is recorded in the office of the county recorder or the registrar of titles in the county where the real estate is situated; or (2) the instrument of severance is executed by all of the joint tenants; or (3) the severance is ordered by a court of competent jurisdiction; or (4) a severance is effected pursuant to bankruptcy of a joint tenant." Minn. Stat. § 500.19, subd. 5 (2012).

*Gale v. Hopkins,* 165 Minn. 177, 181, 206 N.W. 164, 165 (1925).

 A waiver of one's homestead rights must generally be express in order to be valid. For example, in *Argonaut Insurance Company v. Cooper,* we held that language in an indemnity agreement in which one party agreed to "waive and abandon ... all rights to claim *any of the property, including the respective homesteads,* as exempt from levy, execution, sale or other legal process" was a proper waiver of homestead rights because the party "clearly listed the [homestead] as security" and had therefore "waived his constitutional and statutory right to claim any of his [homestead] property as exempt." 261 N.W.2d at 743–45. In contrast, we are reluctant to conclude that a party has waived homestead rights when the purported waiver consists of general language without mention of the specific homestead property. For example, in *Benning v. Hessler,* we held that a waiver as to a party's "right and benefit of any law ... exempting property, real, or personal, from sale on judgment execution" was not a valid waiver of homestead rights. 144 Minn. 403, 403–04, 175 N.W. 682, 682–83 (1920). We reasoned:

> The waiver ... binds no specific property. It does not purport to be a charge upon property. It is in terms but a waiver. It describes nothing and creates a lien upon nothing. It cannot be said that the debt sued upon is a charge in writing on the premises in question. It does not subject the homestead to a levy under the execution.

*Id.* at 405, 175 N.W. at 683.

Whether Antonio waived his homestead rights turns on the language of the quitclaim deed between Antonio and Detlefson–Delano, which we review de novo. *See In re Stisser Grantor Trust,* 818 N.W.2d 495, 502 (Minn.2012). The quit-claim deed states that Antonio "does hereby remise, release and quitclaim ... all the right, title, interest and claim" that he had in the property to Detlefson–Delano. However, the quitclaim deed does not include an express waiver of Antonio's homestead rights. Additionally, the deed suffers from some of the same flaws as the purported waiver in *Benning.* It is completely silent as to any language that would charge the property, create a lien upon it, or subject it to execution by creditors. Therefore, we conclude that Antonio did not waive his homestead rights through the execution of the quitclaim deed.

In conclusion, we hold that both spouses must sign a conveyance of the homestead to a third party pursuant to Minn.Stat. § 507.02 unless (1) a statutory exception to the signature requirement applies or (2) one spouse has explicitly waived his or her rights under the homestead statute. Because the mortgage at issue here does not meet any of the statutory exceptions and because Antonio's quitclaim deed did not contain an explicit waiver of his rights under the homestead statute, we reverse the court of appeals decision and conclude that the mortgage signed by Detlefson–Delano in favor of MCU is void pursuant to Minn.Stat. § 507.02.

Reversed.