**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0193**

CitiMortgage, Inc. a successor by merger to
ABN AMRO Mortgage Group, Inc.,
Appellant,

vs.

Sandra Lee Akers,
Respondent,

William Lee Akers,
Respondent.

**Filed December 22, 2014**
**Affirmed**
**Johnson, Judge**

Hennepin County District Court
File No. 27-CV-12-20264

Timothy J. Nolan, Timothy J. Nolan, PLLC, St. Louis Park, Minnesota (for appellant)

Michael K. Hoverson, Hoverson Law Offices, P.A., Minneapolis, Minnesota; and

Paul F. Shoemaker, Shoemaker & Shoemaker, PLLC, Bloomington, Minnesota (for respondent Sandra Akers)

Considered and decided by Hooten, Presiding Judge; Johnson, Judge; and Klaphake, Judge.[*]

**S Y L L A B U S**

If a married person forges a spouse's signature on a power-of-attorney document that purports to authorize the forger to take action on behalf of the spouse, and if the

---

[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

forger uses the forged power of attorney to execute a mortgage on the marital homestead on the spouse's behalf without the spouse's knowledge, the mortgage is void pursuant to section 507.02 of the Minnesota Statutes because the forger is not the spouse's "duly appointed attorney-in-fact." Furthermore, the forged power-of-attorney document is not entitled to the presumption of validity created by section 523.04 of the Minnesota Statutes because the power-of-attorney document was not "validly executed" by the spouse.

## O P I N I O N

**JOHNSON**, Judge

William Lee Akers forged the signature of his then-wife, Sandra Lee Akers, on a power-of-attorney document. He used the power-of-attorney document as the purported basis for executing, on Sandra's behalf, without her knowledge, a mortgage on their marital homestead. The mortgage later was acquired by CitiMortgage, which commenced this action for a declaration that the mortgage is enforceable and valid, which prompted Sandra to assert a counterclaim for a declaration that the mortgage is void. The district court declared the mortgage void and entered judgment in Sandra's favor. CitiMortgage appeals. We affirm.

## FACTS

The property at issue in this appeal is a single-family residence in the city of Bloomington. Sandra purchased the home in 1970. She and William were married in 1983. The property was unencumbered until 1997, when the couple obtained a $24,000 home-improvement loan, which was secured by a mortgage on the property.

In the spring of 2004, William told a mortgage broker that he wished to obtain a loan by placing a mortgage on the home that he shared with Sandra, without her knowledge. With the broker's assistance, and without Sandra's knowledge, William forged Sandra's signature on a power-of-attorney document that purported to invest in him the powers of an attorney-in-fact. The power-of-attorney document is irregular in that the Acknowledgement of Principal portion does not refer to Sandra because the notary public did not fill in the blank following the clause, "This instrument was acknowledged before me . . . by . . . ." The notary public nonetheless signed and stamped the document.

In June 2004, William borrowed $232,800 from ABN AMRO Mortgage Group, Inc. The loan was secured by a mortgage against the home that he shared with Sandra. William signed and initialed the necessary loan documents on Sandra's behalf as her attorney-in-fact, without her knowledge. William also forged Sandra's signature when endorsing the check from the lender. William used approximately $133,000 of the proceeds of the loan to pay off a previous loan that he had acquired without Sandra's knowledge, approximately $18,000 to pay off the 1997 home-improvement loan, and approximately $75,000 to pay off his personal credit-card debt. In 2007, CitiMortgage acquired the mortgage when its parent company acquired ABN AMRO Mortgage Group.

In September 2008, Sandra obtained a copy of her credit report and discovered debts that previously were unknown to her, including the 2004 loan from ABN AMRO. In January 2009, she filed an incident report with the Bloomington Police Department, accusing William of identity theft and fraud. In February 2009, Sandra's attorney

informed CitiMortgage that William had fraudulently conveyed the mortgage to ABN AMRO and disputed the validity of the mortgage with respect to Sandra. In June 2009, after obtaining a copy of the forged power-of-attorney document from CitiMortgage, Sandra completed an affidavit of forgery in which she stated that she did not sign the power-of-attorney document or authorize William to sign it.

Sandra and William separated in February 2009, and she petitioned for dissolution of the marriage in April 2009. CitiMortgage commenced foreclosure proceedings in August 2009. In April 2010, the dissolution judgment and decree awarded all interest in the property to Sandra and assigned to William sole responsibility for the 2004 loan and the mortgage because the transaction was done "without [Sandra's] knowledge or consent."

In August 2012, CitiMortgage commenced this action, seeking a declaration that the 2004 mortgage is valid and enforceable against both William and Sandra. In her answer, Sandra asserted a counterclaim against CitiMortgage, seeking a declaration that the mortgage is void. She also asserted cross-claims against William for common-law fraud, statutory fraud, unjust enrichment, and indemnification. William did not respond to any of the pleadings or otherwise make an appearance.

In May 2013, CitiMortgage moved for summary judgment. CitiMortgage argued that the mortgage is valid and enforceable despite the forged power-of-attorney document on the ground that a state statute presumes the validity of a "written power of attorney that is dated and purports to be signed by the principal named in it." *See* Minn. Stat § 523.04 (2012). CitiMortgage argued in the alternative that both William and Sandra

4

should be estopped from challenging the validity of the mortgage because both benefited from the loan that was secured by the mortgage. In response, Sandra argued that the mortgage is void because it does not comply with a state statute that requires both married spouses to execute a mortgage encumbering a marital homestead. *See* Minn. Stat. § 507.02 (2012).

The district court concluded that the mortgage is void and unenforceable and denied CitiMortgage's motion in July 2013. The district court reasoned that the presumption of validity in section 523.04 does not apply because the power-of-attorney document was not validly executed. The district court further reasoned that the mortgage is void under section 507.02 because it was not signed by Sandra or her duly appointed attorney-in-fact. The district court also concluded that CitiMortgage is not entitled to equitable relief.

In lieu of a trial, the parties executed and submitted to the district court a stipulation requesting entry of final judgment. In December 2013, the district court issued an order for entry of judgment, and judgment was entered in favor of Sandra. CitiMortgage appeals.

## ISSUES

I.      Is the mortgage void because William executed it on Sandra's behalf using a forged power-of-attorney document?

II.     Is Sandra entitled to judgment on CitiMortgage's equitable-estoppel claim?

**ANALYSIS**

CitiMortgage argues that the district court erred by entering judgment in Sandra's favor. In their appellate briefs, the parties to the appeal implicitly assume that the district court's reasons for entering final judgment in Sandra's favor are reflected in the order and memorandum that resolved CitiMortgage's motion for summary judgment. Consistent with the parties' implicit agreement and our review of the district court record, we will analyze the parties' arguments based on the same assumption.

**I.**

CitiMortgage argues that the district court erred in its analysis of state statutes that govern a married person's conveyance of interests in a marital homestead and that govern a power of attorney.

The parties' arguments raise issues of statutory interpretation. "Our primary goal in statutory interpretation is to give effect to the intent of the Legislature." *Swanson v. Brewster*, 784 N.W.2d 246, 284 (Minn. 2010). "If the Legislature's intent is clear from the unambiguous language of the statute, we apply the statute according to its plain meaning." *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 716-17 (Minn. 2014). We interpret a statute as a whole so that each section does not conflict with surrounding sections. *American Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000). We apply a *de novo* standard of review to a district court's interpretation of a statute. *Goodman v. Best Buy, Inc.*, 777 N.W.2d 755, 758 (Minn. 2010).

**A.      Section 507.02: Validity of Mortgage**

CitiMortgage contends that the district court erred by adopting Sandra's argument that the mortgage is void because she did not sign it.

The district court applied a statute that provides: "If the owner is married, no conveyance of the homestead . . . shall be valid without the signatures of both spouses.  A spouse's signature may be made by the spouse's duly appointed attorney-in-fact."  Minn. Stat. § 507.02 (2012).  This statute contains certain exceptions, but none are triggered by the facts of this case.  *See id.*  For purposes of section 507.02, the term "homestead" is defined as the "house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of area and value hereinafter limited and defined."  Minn. Stat. § 510.01 (2012); *see also Marine Credit Union v. Detlefson-Delano*, 830 N.W.2d 859, 863 (Minn. 2013) (applying section 510.01 and section 507.02).  The term "conveyance" is defined in chapter 507 to include "every instrument in writing whereby any interest in real estate is . . . mortgaged."  Minn. Stat. § 507.01 (2012).  Section 507.02 is a means of implementing the state constitutional homestead exemption, which is intended "to ensure 'a stable and independent citizenry and thereby promote the public welfare'" by "'protect[ing] with jealous zeal the homestead right of the citizen.'"  *See Marine Credit Union*, 830 N.W.2d at 863 (quoting *Holden v. Farwell, Ozmun, Kirk & Co.*, 223 Minn. 550, 558, 27 N.W.2d 641, 646 (1947)).

Given the plain language of section 507.02, a mortgage is not valid unless both members of a married couple execute it, either personally or through a "duly appointed

7

attorney-in-fact." *See* Minn. Stat. § 507.02. It is undisputed in this case that the 2004 mortgage encumbered Sandra's and William's homestead, that William signed the mortgage on his own behalf, that Sandra did not sign the mortgage, and that William signed the mortgage on Sandra's behalf pursuant to a power-of-attorney document. The key question concerning the application of section 507.02 is whether William was Sandra's "duly appointed attorney-in-fact," as that term is used in the statute.

To identify the plain meaning of a statute, it is appropriate to refer to the common usage of the words in the statute. *Emerson v. School Bd. of Indep. Sch. Dist. 199*, 809 N.W.2d 679, 682 (Minn. 2012). The common meaning of the word "duly" is "in a proper manner" or "in accordance with legal requirements." *Black's Law Dictionary* 576 (9th ed. 2009); *see also American Heritage Dictionary of the English Language* 554 (5th ed. 2011). The statute governing powers of attorney provides that a power-of-attorney document must be "dated and signed by the principal." Minn. Stat. § 523.01 (2012). In this case, the power-of-attorney document that William used when he executed the mortgage on Sandra's behalf is a document that was not signed and dated by Sandra. Because the power-of-attorney document was not executed in a manner consistent with law, William was not Sandra's "duly appointed attorney-in-fact." *See* Minn. Stat. § 507.02; *Gores v. Schultz*, 777 N.W.2d 522, 527 (Minn. App. 2009) (applying section 507.02 and stating "general rule" that "forgery renders an instrument void"), *review denied* (Minn. Mar. 16, 2010).

CitiMortgage seeks to avoid this reasoning and conclusion by contending that section 507.02 does not apply because of the exception in the statute governing powers of

8

attorney. CitiMortgage misinterprets Sandra's argument. If Sandra had attempted to invoke section 507.02 to challenge only the purported power of attorney, her argument would fail because section 507.02 would not apply because a power of attorney is not a conveyance of the type governed by section 507.02. *See* Minn. Stat. § 507.01. But Sandra invoked section 507.02 to invalidate the mortgage. Under the plain language of 507.02, the mortgage is invalid because William was not Sandra's "duly appointed" attorney-in-fact.

Thus, the district court did not err by reasoning that the conveyance of the mortgage does not comply with section 507.02 because the mortgage was not signed by either Sandra or her duly-appointed attorney-in-fact. "[W]ithout the signatures of both spouses a conveyance of homestead property is not merely voidable but is void." *Dvorak v. Maring*, 285 N.W.2d 675, 677 (Minn. 1979); *see also Gores*, 777 N.W.2d at 525.

**B.**     **Section 523.04: Presumption of Validity of Power of Attorney**

CitiMortgage also contends that the district court erred by rejecting its argument that the power-of-attorney document should be presumed valid, absent actual knowledge by ABN AMRO that the document was not validly executed.

The district court applied a statute that provides: "A written power of attorney that is dated and purports to be signed by the principal named in it is presumed to be valid. All parties may rely on this presumption except those who have actual knowledge that the power was not validly executed." Minn. Stat. § 523.04. For purposes of chapter 523, the term "power of attorney" is defined to mean "a validly executed power of attorney."

9

Minn. Stat. § 523.03 (2012). The meaning of the phrase "validly executed power of attorney" is explained by another statute, which provides:

> A person who is a competent adult may, as principal, designate another person or an authorized corporation as the person's attorney-in-fact by a written power of attorney. The power of attorney is validly executed when it is dated and signed by the principal and, in the case of a signature on behalf of the principal, by another, or by a mark, acknowledged by a notary public. Only powers of attorney validly created pursuant to this section or section 523.02 are validly executed powers of attorney for the purposes of sections 523.01 to 523.24.

Minn. Stat. § 523.01.

Given the plain language of sections 523.01 and 523.03, a power of attorney that purports to be dated and signed by a principal is entitled to a presumption of validity only if the principal actually dated and signed the document. *See* Minn. Stat. §§ 523.01, .03. It is undisputed that Sandra did not affix her signature to the power-of-attorney document, which means that the document was not validly executed. Accordingly, the document is not entitled to the presumption of validity created by section 523.04.

CitiMortgage contends that it is entitled to rely on the power-of-attorney document on which William forged Sandra's signature because the document appears to have been dated and signed by Sandra and because there is no evidence that ABN AMRO had actual knowledge that the power-of-attorney document was not validly executed. CitiMortgage's contention fails to account for the definition of "power of attorney" in section 523.03 and, in turn, the definition of "validly executed" in section 523.01. Given the plain language of those two statutes, the power-of-attorney document in this case is

10

presumed to be valid only if it was validly executed, and it is validly executed only if it was "dated and signed by the principal," *i.e.*, Sandra.  *See* Minn. Stat. §§ 523.01, .03.

CitiMortgage contends further that this interpretation of the relevant statutes would result in an unduly narrow presumption that would be defeated in most cases involving an invalid power of attorney.[1]  We express no view as to whether the presumption is too narrow; our analysis is based solely on the plain language of the relevant statutes.[2]  In light of the definitions in sections 523.01 and 523.03, the

---

[1] CitiMortgage's contention that the district court's interpretation of section 523.04 renders the presumption "meaningless" is belied by the only other opinion of this court on the subject.  In *Bengston v. Dzandzara*, No. A05-0531, 2006 WL 538951 (Minn. App. Mar. 7, 2006), we applied the presumption of validity and enforced the mortgage because the non-signing spouse actually signed and dated the power of attorney document, even though her husband had lied to her about the purposes of the document and the authority she was granting to him.  *Id.* at *1-2.

We note that, even though a lender is required "to accept the authority of an attorney-in-fact to exercise a power granted by a power of attorney," Minn. Stat. § 523.20 (2012), a lender is not required to do so if the document does not comply with the requirements of a statutory short-form power-of-attorney document, Minn. Stat. § 523.23, subd. 3 (2012).  The district court commented that the power-of-attorney document in this case did not satisfy the requirements of section 523.23, subdivision 3, because the acknowledgment section was incomplete.  If that observation is correct, ABN AMRO was not required to recognize William's purported authority to act on Sandra's behalf.  *See* Minn. Stat. § 523.23, subd. 3.  Even if a lender is required to honor a power of attorney, the lender remains free to adopt procedures to detect and protect against power-of-attorney documents that were fraudulently executed.  *See* Federal Financial Institutions Examination Council, *The Detection and Deterrence of Mortgage Fraud Against Financial Institutions: A White Paper* 66-67 (2009), *available at* http://www.ffiec.gov/exam/mtg_fraud_wp_feb2010.pdf.

[2] Our interpretation of the relevant statutes is consistent with the history of section 523.03.  Until 1992, the statute read: "*Unless the context requires otherwise*, . . . all references to a 'power of attorney' mean a validly executed power of attorney."  Minn. Stat. § 523.03 (1990) (emphasis added).  In 1992, the legislature amended section 523.03 to read, "As used in this chapter . . . 'power of attorney' means a validly executed power of attorney."  1992 Minn. Laws ch. 548, § 8, at 1470, codified at Minn. Stat. § 523.03 (1992).  By removing the qualifier "[u]nless the context requires otherwise," the

presumption in section 523.04 simply does not apply if a principal has not validly executed a power-of-attorney document by dating it and signing it.

Thus, the district court did not err by reasoning that the forged power-of-attorney document that William used when conveying the mortgage to ABN AMRO is not presumed to be valid. Because CitiMortgage does not contend that the power-of-attorney document is valid for any other reason, we conclude that it is invalid. In light of that conclusion, we need not address Sandra's alternative argument that ABN AMRO had actual knowledge that the power-of-attorney document was not validly executed. We conclude that the district court properly determined that the mortgage is void.

## II.

CitiMortgage argues, in the alternative, that the district court erred by entering judgment in Sandra's favor on its claim that Sandra should be equitably estopped from denying the validity of the mortgage. This court applies an abuse-of-discretion standard of review. *See City of North Oaks v. Sarpal*, 797 N.W.2d 18, 23 (Minn. 2011).

The doctrine of equitable estoppel "is intended to prevent a party from taking unconscionable advantage of his own wrong by asserting his strict legal rights." *Northern Petrochemical Co. v. U.S. Fire Ins. Co.*, 277 N.W.2d 408, 410 (Minn. 1979). In the context of a married person's conveyance of an interest in a homestead, a district court may, in appropriate circumstances, conclude that a person is equitably estopped from denying the validity of the conveyance "even if the statutory requirements [of

---

legislature demonstrated its intention that the presumption of validity in section 523.04 should apply only if a power-of-attorney document was validly executed, without consideration of other factors.

section 507.02] are not met." *Dvorak*, 285 N.W.2d at 677. More specifically, a married person who did not sign a conveyance of a homestead in compliance with section 507.02 may be estopped from denying the validity of the conveyance if, among other things, the person had full knowledge of and consented to the conveyance, *see id.*, or "voluntarily accept[ed] and retain[ed] the proceeds of" the conveyance, *Anderson v. First Nat'l Bank of Pine City*, 303 Minn. 408, 412, 228 N.W.2d 257, 260 (1975).

CitiMortgage's claim fails because its evidence does not satisfy either of these alternative requirements. First, CitiMortgage has no evidence that Sandra knew about or consented to William's execution of the mortgage when he executed it. *See Dvorak*, 285 N.W.2d at 677-78. The district court noted that Sandra "had no knowledge whatsoever of the Mortgage or the Power of Attorney in 2004." The evidence in the record indicates that William told Sandra in 2004 that he paid off the 1997 home-improvement loan with the proceeds of a commission check. The evidence also indicates that Sandra did not learn of the 2004 loan until 2008 because William directed all correspondence and statements to his business address or a private post-office box. CitiMortgage suggests that Sandra should have known about the mortgage and would have known about it with more diligence. But CitiMortgage cites no caselaw for the proposition that a non-signing spouse may be equitably estopped from denying the validity of a mortgage based on what a non-signing spouse could have or should have known.

Second, CitiMortgage has no evidence that Sandra voluntarily accepted and retained the proceeds of the conveyance. CitiMortgage relies on evidence that William used some of the proceeds of the 2004 loan to pay off the 1997 home-improvement loan,

13

which reduced both William's and Sandra's indebtedness, and that William used some of the proceeds of the 2004 loan "to do things with" Sandra. But the evidence also shows that Sandra did not learn of the 2004 loan until 2008, through her own investigation. The facts of this case are similar to the facts of *Anderson*, in which the non-signing spouse "was never in a position to accept or reject the loan proceeds," which caused the supreme court to conclude that he should not be "estopped from repudiating the loan agreement." *See Anderson*, 303 Minn. at 413, 228 N.W.2d at 260; *see also Schoenborn v. State Bank of Richmond*, 159 Minn. 205, 212, 198 N.W. 801, 803 (1924). As in *Anderson*, Sandra did not learn of the 2004 loan until "the benefit had already been conferred and the proceeds used." *See Anderson*, 303 Minn. at 413, 228 N.W.2d at 260.

We conclude that the district court did not err by entering judgment in Sandra's favor on CitiMortgage's claim that Sandra should be equitably estopped from denying the validity of the mortgage.

## DECISION

The district court did not err by concluding that the mortgage is void on the grounds that neither Sandra nor her duly appointed attorney-in-fact signed it and that the forged power-of-attorney document is not presumed to be valid. The district court did not err by concluding that Sandra is not equitably estopped from denying the validity of the mortgage.

**Affirmed.**

14